ELLA N. GLASGOW v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division One, November 22, 1905.

1. **JUROR: Qualification: Discretion of Court.** The authority of the trial court in superintending the making up of the panel, is not limited to a decision of the strict legal question of the qualification of a juror; it may, in the exercise of a judicial discretion, excuse a juror, who, though not legally disqualified, yet has such relations to one of the litigants as might reasonably fill the other with apprehension as to his fairness.

2. ——: ——: ——: **Clerk of Allied Corporation.** Among the panel of eighteen, was a clerk in a corporation whose president was also president of the defendant corporation, and on his *voir dire* examination he said that fact would not influence his verdict if he should be chosen to sit in the case, yet in public opinion the two corporations were looked upon as allied, and that fact might render his motive liable to imputation, and asked to be excused. The respondent challenged him for cause, the court overruled the challenge but excused the juror. Appellant assigns that action as error. *Held,* that the court correctly overruled the challenge, because the facts stated did not disqualify the juror; but there was no error in excusing the juror.

3. **PERSONAL INJURIES: Evidence: Condition as to Health: Detailed Description.** Where a witness has already stated that the plaintiff, who sues a railway for personal injuries, had told deponent she was prior to the accident afflicted in the way she claimed at the trial to be, it was not reversible error to exclude evidence of her condition as it appeared to deponent, detailing certain indications of an unhealthy condition.

4. ——: ——: ——: **Habits of Intoxication.** Evidence that plaintiff, prior to her injuries, was in the habit of drinking intox-

icating liquors, is not admissible, as independent evidence, in a personal injury case; and if it is not offered as subsidiary evidence or as a foundation for other evidence and the court apprised of its purpose, for instance, that her condition as a result of that habit would account for her condition at the time the doctor examined her after her injuries, it should be excluded.

5. ——: ——: ——: **Physician.** If plaintiff objects, the defendant cannot show by her physician what she told him at a time he treated her prior to the accident.

6. ——: ——: ——: ——: **Conclusion.** It is not competent for physicians called as experts to draw conclusions from facts in the case as to what caused plaintiff's physical condition, where their evidence discloses that the same condition may have resulted from other causes. In such case, it is for the jury, and not for them, to say that plaintiff's diseased condition resulted from a fall from a street car. Especially is such testimony hurtful where the question of whether or not plaintiff ever fell from a street car, is one of the real issues in the testimony.

7. **EVIDENCE: Uncertified Deposition: Use for Contradictions.** Plaintiff's deposition taken by defendant, her counsel being present, signed by her, but not signed and certified to by the notary or filed in court, if it contains statements contradictory of her statements made by her at the trial, may be used by defendant for the purposes of contradiction by way of drawing her attention to it and cross-examining her in regard to it.

8. **DAMAGES: Failure to Obtain Medical Aid.** A plaintiff who sues for damages resulting from physical injuries received in a street railway accident must use reasonable care to obtain medical or surgical aid, and if she neglects to do so she cannot recover for what she may have suffered in consequence of her failure to use such reasonable care.

9. ——: ——: **Poverty: Hope of Recovery.** Where the experts testify that if plaintiff had been in a healthy condition at the time of receiving the injury prompt surgical aid could probably in a short while have effected a complete cure, and she testifies that the reason she did not obtain such aid for thirteen months was that she was poor and did not apply to the defendant because she hoped all the time she would get well, it is for the jury to say whether she failed to exercise the reasonable care which the law requires.

10. ——: ——: **Instruction.** An instruction which makes plaintiff's failure to obtain medical aid after the accident contributory negligence, is faulty. The law does not make a failure to obtain such aid contributory negligence, but a failure to use reasonable care to obtain such aid.

11. ———: ———: ———: **Contradictory.** Instructions should not be contradictory. An instruction which tells the jury to award plaintiff damages as for a permanent injury, if they find it will be permanent, without considering whether the character of permanency is the result of the accident or of a failure to obtain medical treatment, is contradictory of another which directs them not to award her damages for an aggravated condition of her malady if it was caused by an unreasonable delay in obtaining such medical aid.

12. **PRACTICE: Pleadings.** The pleadings, though usually read in the presence of the jury, are addressed to the court.

13. ———: ———: **Issues: Instruction: Competency of Conductor.** The petition charged that the conductor was intoxicated, and for that reason was incompetent, and failed to give plaintiff sufficient time to alight from the car. There was no evidence that he was intoxicated.    *Held,* that the court properly gave an instruction telling the jury that there was no evidence that the conductor's intoxication was the proximate cause of the injury, and did not err in refusing to instruct them that there was no evidence that the conductor was incompetent to perform his duties.

14. ———: **Remarks of Attorneys: When Reviewable.** The bill of exceptions must state the remarks made by attorneys in the argument of a case before the jury, or else they are not reviewable on appeal. They cannot be preserved by affidavits.

Appeal from Jackson Circuit Court.—*Hon. Edw. P. Gates,* Judge.

Reversed and remanded.

*John H. Lucas* and *Chas. A. Loomis* for appellant.

(1) The verdict of the jury was grossly excessive and against the great weight of the evidence upon the extent and character of the injury, and was clearly the result of passion and prejudice. Garrett v. Greenwell, 92 Mo. 120; Chouquette v. Railroad, 152 Mo. 266; Zoye v. Trawich, 94 Mo. App. 307; Cooper v. Railroad, 94 Mo. App. 425; Meir v. Railroad, 81 Mo. App. 410; Kennedy v. Railroad, 103 Mo. 1; Chitty v. Railroad, 148 Mo. 64; Spohn v. Railroad, 87

Mo. 84; Reichenbach v. Ellerbe, 115 Mo. 588. (2) The court erred in averruling the defendant's objection to the hypothetical questions of the plaintiff propounded to the plaintiff's physician. Taylor v. Railroad, 185 Mo. 255; Gutridge v. Railroad, 94 Mo. 472; Boettger v. Iron Co., 136 Mo. 536; Langstrom v. Railroad, 147 Mo. 465; Koenig v. Railroad 173 Mo. 698; Benjamin v. Railroad, 131 Mo. 289; Graney v. Railroad, 157 Mo. 682; Lawson on Expert Evidence (2 Ed.), 172; Railroad v. Sheldon, 51 Pac. 809; Jones v. President, etc., 50 N. W. 737. (3) The court erred in excluding evidence offered by the defendant which was relevant, competent and material, proving and tending to prove the condition of plaintiff's health, her habits, demeanor, physical appearance and conduct prior to the accident. (a) Defendant offered testimony tending to prove the physical condition, ability and general appearance as to health and vigor, and her ailments bearing directly upon the existence or non-existence of the injuries complained of, which was excluded by the court. (b) Defendant offered evidence tending to prove plaintiff's habits, conduct, demeanor, appearance, physical strength and ability, and the fact of her becoming intoxicated upon numerous occasions and under various circumstances, which was improperly excluded by the court. (4) It was the duty of plaintiff under the conditions to exercise reasonable care and diligence to procure reasonable and necessary medical treatment, and she cannot recover for damages resulting from such aggravated and increased injuries caused by her own negligence and want of care. And the court erred in refusing to give instructions 11 and 12 asked by defendant. 1 Thompson on Negligence, secs. 202, 251, and 201; Keyes v. Cedar Rapids, 78 N. W. 227; Beach on Contrib. Neg. sec. 34; City of Goshen v. England, 71 N. E. 977; Beach

on Contrib. Neg., sec. 34, p. 48, and sec. 69, p. 109; Railroad v. Hobbs, 43 N. E. 479; Railroad v. Jones, 108 Ind. 551; Beach on Contrib. Neg., p. 73, sec. 24; Railroad v. Newell, 104 Ind. 264; 1 Shear. & R. Neg. (4 Ed.), secs. 107-109; 2 Shear. & R. Neg., sec. 741; Bardwell v. Town of Jamaica 15 Vt. 438; 2 Thomp. Neg., p. 1162, sec. 13; Railroad v. Falvey, 104 Ind. 409; Gould v. McKenna, 86 Pa. St. 297. (5) Counsel for plaintiff, in his closing argument to the jury, made statements, charges and accusations which were highly inflammatory and criminal in their character, and which were calculated to (and did) arouse the passions and prejudices of the jury against the defendant. And which were not founded upon nor supported by any evidence in the case, which statements were excepted to by the defendant at the time, and defendant's objections were overruled by the court. Thompson on Trials, secs. 958 and 969; Marble v. Walters, 19 Mo. App. 135; McDonald v. Cash, 45 Mo. App. 79; Smith v. Tel. Co., 55 Mo. App. 626; Ritter v. Bank, 87 Mo. 574; Evans v. Trenton, 112 Mo. 400; Gibson v. Zeibig, 24 Mo. App. 65; Bishop v. Hunt, 24 Mo. App. 377; Railroad v. Meyers, 63 Fed. 793; Hall v. United States, 150 U. S. 76; Tucker v. Hanniker, 41 N. H. 317; Massingale v. Rice, 94 Mo. App. 430; Mahner v. Linck, 70 Mo. App. 380; Harper v. Tel. Co., 92 Mo. App. 304.

*Scarritt, Griffith & Jones* for respondent.

(1) The evidence can not but impress any reasonable mind that the damages awarded in this action are not excessive and under the authority of our Supreme Court decisions, the verdict should be upheld. O'Neil v. Kansas City, 178 Mo. 91; Wood v. Railroad, 181 Mo. 433; Hanlon v. Railroad, 104 Mo. 381; Haxton v. Kansas City, 88 S. W. 714; Rapp v. St. Louis, 88 S. W. 865; Smith v. Fordyce, 88 S. W. 679; Drake v. Kansas City, 88 S. W. 690; Henderson v. Kansas City, 177 Mo. 477.

The jury are the judges of the credibility of witnesses and where there is substantial evidence to support their verdict, it will not be disturbed as being excessive. Dumman v. St. Louis, 152 Mo. 186; Railroad v. Railroad, 138 Mo. 591; McCloskey v. Pub Co., 163 Mo. 22. (2) The hypothetical questions propounded to plaintiff's physician are based on the evidence and are proper and the trial court did not err in overruling appellant's objections thereto. Redman v. Railroad, 185 Mo. 1; Wood v. Railroad, 181 Mo. 433; Franklin v. Railroad, 87 S. W. 930; Wigmore on Evidence, sec. 673; O'Neil v. Kansas City, 178 Mo.91; Powers v. Kansas City, 56 Mo. App. 577; Russ v. Railroad, 112 Mo. 48; Smith v. Railroad, 119 Mo. 255; Hicks v. Railroad, 124 Mo. 125; Fullerton v. Fordyce, 144 Mo. 531; Robinson v. Railroad, 103 Mo. App. 112. (3) The court did not err in excluding the evidence complained of by defendant under the third point in its brief. The condition of plaintiff's health prior to the date of the accident was incompetent, irrelevant and immaterial to any issue in the case. The evidence excluded, as shown by the record, was as to plaintiff's physical appearance ten or twelve years before, and as to specific acts of drinking and intoxication of which defendant claimed the plaintiff was guilty. These were all properly excluded from the jury. Railroad v. Cotton, 140 Ill. 486; Copeland v. Railroad, 175 Mo. 650; Wright v. Kansas City, 187 Mo. 678; Railroad v. Boteler, 38 Md. 568; State v. Parker, 96 Mo. 389; State v. Taber, 95 Mo. 585; State v. Jackson, 95 Mo. 623; Columbia v. Johnson, 72 Mo. App. 238; State v. Crow, 107 Mo. 346; State v. Ringo, 71 Mo. 419; State v. Goetz, 34 Mo. 85. (4) The court did not err in refusing defendant's instructions 11 and 12 as to the aggravation of the injury. Fugate v. Miller, 109 Mo. 281; Gorham v. Railroad, 113 Mo. 408; State v. Gates, 130 Mo. 351; Buck v. Railroad, 108 Mo. 179; Wolfe v. Supreme Lodge, 160 Mo. 675;

Connolly v. St. Joseph Press Ptg. Co., 160 Mo. 447; Klockenbrink v. Railroad, 81 Mo. App. 351. (5) Defendant's exception to the remarks of plaintiff's counsel in his closing argument was not preserved in the record. The remarks, which defendant falsely asserts were made by plaintiff's counsel, first appear in defendant's motion for a new trial, but were not taken down at the time of the trial by the court stenographer and made a part of the record. Embodying the remarks of the plaintiff's counsel objected to in a motion for new trial is not sufficient. Estes v. Railroad, 85 S. W. 909; James v. Kansas City, 85 Mo. App. 20; State v. Smith, 114 Mo. 406; State v. Brown. 181 Mo. 222; Mercantile Co. v. Burrell Sisters, 66 Mo. App. 117; State v. Rufus, 149 Mo. 406. (6) There was no error in the refusal of instructions 15 and 16 asked by defendant. The giving of said instructions would have been equivalent to instructing the jury to return a verdict for the defendant. Fugate v. Miller, 109 Mo. 281; Gorham v. Railroad, 113 Mo. 408; State v. Gates, 130 Mo. 351; Buck v. Railroad, 108 Mo. 179; Wolfe v. Supreme Lodge, 160 Mo. 675; Connolly v. St. Joseph Press Ptg. Co., 166 Mo. 447; Klockenbrink v. Railroad, 81 Mo. App. 351. (7) There was no error in excluding the testimony of Dr. T. Doyle, offered as a witness by defendant. The information acquired by the witnesses was privileged. R. S. 1899, sec. 4659; Kling v. Kansas City, 27 Mo. App. 231; James v. Kansas City, 85 Mo. App. 20; Groll v. Tower, 85 Mo. 249; Corbett v. Railroad, 26 Mo. App. 621; Norton v. City of Moberly, 18 Mo. App. 457.

VALLIANT, J.—Plaintiff recovered a judgment against the defendant, a street railway company, for $5000 damages for personal injuries received by her, by falling when she was in the act of alighting from

one of defendant's street cars. Her statement is that she was a passenger on the car which had stopped in obedience to a signal to allow her to alight, and that while she was on the step in the act of alighting the car was suddenly started forward with such force that she was thrown to the street and received severe injuries. The accident occurred September 25th, 1900. This suit was brought March 4th, 1902.

The plaintiff's testimony tended to prove as follows: She was about thirty-five years old, married, but separated from her husband, was living with her parents and was employed as a saleswoman in a department store at a salary of four dollars a week. She was returning home from her day's work on the afternoon in question, when the car in which she had taken passage approached the street at which she designed to alight; at her request it was stopped, and she arose and passed out in view of the conductor to the step from the rear platform, and as she was in the act of stepping to the ground—but before she could finish the act—the conductor gave a signal for the car to start ahead, and it did so with so much sudden force that she was thrown to the street and badly hurt; her mother and another woman friend who were present carried her into the house and put her to bed and bandaged her bruises. The next morning she went to her work and continued to do so for four or five days but was feeling badly all the while and at the end of that period, say about the 4th or 5th of October, she had to give up her work and go home and has not since been able to do any work.

In September, 1901, about a year after the accident, she got a divorce from her then husband, and in October, 1901, married her present husband, who at that time was in the employ of the defendant company as a street car conductor, but on the last of February, 1902, he either quit or was discharged, and on March

4th thereafter this suit was begun. The testimony deals elaborately with the symptoms and nature of her affliction, but we deem it sufficient for the purpose of the legal questions presented in this appeal to say that her affliction was of a serious and distressing character. It was not until after her marriage in October, 1901, that she consulted a physician, and not until she filed this suit March 4th, 1902, that she notified the defendant that she had met with the accident or suffered any injury. She testified that the reason she did not consult a physician earlier was that she was poor and had no means to pay for the services of a physician, and she asked no assistance from the company because she hoped all the time she would get well.

The bulk of the defendant's testimony was to show that the plaintiff was afflicted with the disease she was complaining of before the date of the alleged accident. A large number of persons who claimed to be friends and associates of the plaintiff testified that they had heard her say at various times before the date of the alleged accident that she was so afflicted, and none of them had ever heard her say that she had met with such accident until after this suit was brought. She herself testified that she had never told anyone besides her father and mother that she had been injured in a street car accident. These witnesses testified that after the date of the alleged accident she was going about and acting as she was accustomed to do before.

When we come to discuss the various assignments of error we may quote the evidence a little more in detail as it bears on each assignment, but the above is sufficient for an understanding of the general nature of the case.

I. In the empanelling of the jury one of the jurors in the array of eighteen, during examination on his *voir dire,* volunteered to say that he was a clerk in another corporation whose president was also the presi-

dent of the defendant corporation, and although he said that fact would not influence his verdict as a juror if he should be chosen to sit in the case, yet in public opinion the two corporations were looked upon as allied and that fact might render his motive liable to imputation, and for that reason he asked the court to excuse him from service. Thereupon counsel for the plaintiff challenged the juror for cause, the court overruled the challenge, but excused the juror. That is assigned as error.

The court was right in overruling the challenge because the facts stated did not disqualify the juror. But the authority of the court in such case is not limited to a decision of the strict legal question of the qualifications of a juror; it has a discretion to be exercised in the administration of justice in which it may excuse a juror who although not legally disqualified yet whose sitting is reasonably liable to fill either party with an apprehension of unfairness. A court in the exercise of that discretion will not attempt to allay an unreasonable suspicion, but when it can remove a cause of reasonable apprehension on the one side without injuring in any degree the rights of the other or giving the other cause for a similar reasonable apprehension, it is the right and duty of the court to do so, and when in that respect the court exercises a sound judicial discretion its ruling will not be disturbed. The trial court stands closer to the source of justice than any other tribunal, upon the trial judge the heaviest responsibility rests, because much of the administration of justice depends on the wise exercise of a discretion that the law has reposed in him alone. We are satisfied that the court exercised its discretion wisely in excusing this juror.

II. The main question in the case was whether the plaintiff's condition as it was in October, 1901, when according to her statement, she first consulted a

physician, was the result of the alleged accident. Many witnesses for defendant had testified that on various occasions, prior to the date of the alleged accident, the plaintiff had told them that she was afflicted in the same way. These witnesses, if they told the truth, were well acquainted with the plaintiff and some of them were relations of hers.

The deposition of one of these witnesses was read by defendant, and in it, after having stated that the plaintiff told her that she was afflicted in that way and was under treatment of a physician for it, the deponent went on to state the condition of the plaintiff as it appeared to her, wherein was detailed certain indications of unhealthy conditions which it is unnecessary to repeat here. Defendant also offered evidence tending to show that the plaintiff was in the habit of drinking intoxicating liquors and of becoming intoxicated. All this evidence, on the objection of plaintiff, was excluded and the ruling is assigned for error.

As the offer of the evidence appears on the face of the record we find no error in its exclusion. The witnesses had already stated that the plaintiff had told them, severally, before the accident that she was afflicted in the way she now claims to be and that evidence went in without objection. It may be that the physical indications detailed in that part of the deposition which was excluded might, by the aid of other testimony, be shown to be symptons of the disease of which the plaintiff now claims to suffer, but in the absence of such other testimony the jury would not be justified in so concluding. And so, too, of the testimony tending to show the habit of intoxication. As independent evidence it was not admissible, and it was not offered as subsidiary evidence or as a foundation for other evidence. Learned counsel in their briefs say that they were entitled to this as a basis on which to predicate hypothetical questions to the expert witness

to show that those symptons and that habit would in a manner at least account for the condition in which the plaintiff was when she called in the physician in October, 1901. But the counsel who tried the case gave the trial court no opportunity to pass on that question. There was no assurance given by counsel that they had evidence at hand and would introduce it to show such condition. Under the circumstances the court's ruling on that point was correct.

III. Defendant introduced a witness, Doctor Doyle, a practicing physician in Kansas City, who testified that in March, 1900 (which was about six months before the alleged accident), he was called to attend the plaintiff; he was asked what she told him concerning her condition and for what disease he prescribed for her. On objection by plaintiff the testimony was excluded and that is assigned for error.

The witness was incompetent to testify if the plaintiff objected; the language of our statute (sec. 4659, R. S. 1899), is, "The following persons shall be incompetent to testify . . . . a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." There was no error in the court's ruling on that point.

IV. The plaintiff called as a witness in her own behalf Dr. Robinson, who was the physician she called to attend her in October, 1901, and who had attended her off and on ever since. This witness described the diseased condition in which he found the plaintiff and in answer to a hypothetical question of her attorney, which included a fall from a street car, as she had described the accident, testified that a fall of that kind could produce that character of disease. On cross-ex-

amination he was asked to state some of the most frequent causes that produced such disease, to which he answered: "Oh, there are so many I don't know." And when asked if the medical books do not say that when such injury follows on a jar or fall it is usually in a case where the parts were already diseased, he answered: "There are cases that way, a great many, certainly." And asked if his books do not teach that in case there was no previous disease, if a displacement such as he found in the plaintiff had been caused by a sudden jar, and, if it had been immediately put back into position, if it would not in a short while be as well as ever, he answered that some authors say so, but witness thought there were few such cases, but further pressed he said: "If the womb is healthy and in perfect condition and placed back immediately after it was tipped, it would probably in a short time be as sound as it ever was." He also stated that if the injury was not treated for a year it would get worse all the while and the patient would probably never recover. Then on re-direct examination he was asked this question by plaintiffs attorney: "From the condition you found her in, assuming as Mr. Loomis says she was, a well woman on the 25th September, when she got this fall, what would be the extent of the fall in order to produce that injury?" To which the witness made this answer: "Why, I would think it would be quite a severe fall that caused that." And this question followed: "Now, did you find any other disease, as far as the uterus is concerned and this trouble that you have been speaking about, with Mrs. Glasgow except what would have been occasioned by a fall?" The witness answered, "No."

To another witness, Dr. Snell, who had examined the plaintiff only two weeks before the trial, a hypothetical question was propounded supposing the plaintiff to have been a sound and healthy woman on Sep-

tember 25th, 1900, and on that day received a fall as she described it and ever since then she had been suffering in the manner stated, then the question was: "To what would you attribute the injury?" The witness answered: "Well, it would be natural to think if a person was sound and well when they got the fall and was sick immediately afterwards that it was due to the fall; that would be the natural conclusion." "Q. Just state what would be the cause of that injury under the state of facts I have mentioned to you in the question. A. You want me to account for the condition I found her in when I examined her? Q. No, I want you to state what, in your opinion, would be the cause of the injury, which you found under the facts as I have stated them in the question, assuming what I said to be true, that is, she was a well woman on the 25th September, and so on as I stated before? A. Then I would say it was due to the fall." This witness also testified that there were many causes which produced that particular kind of female trouble and he enumerated several of them.

Defendant interposed timely objections to all of those questions which called upon the witness to say what was the cause that produced the plaintiff's affliction; the objections were overruled and exceptions taken.

Those objections ought to have been sustained. It was competent for the learned witnesses to state what cause or causes might produce such a result, and this both of them did without objection, stating that such a fall could produce it and that there were many causes which would produce the same effect, but it was incompetent for them to say that in this case the plaintiff's condition was, in their opinion, the result of the alleged fall. It was competent for them in giving their opinions, to speak of that which they knew from their scientific learning and experience; it was not competent for

them to draw conclusions of facts from the evidence in the case, yet that is what they did. If the jury gave credit to the testimony of the physicians the verdict paraphrased would say, ''We the jury find that whilst the plaintiff's affliction might have resulted from many causes, yet the doctors have said it was the result of the fall, and we therefore so find.'' The court in giving its approval to this testimony said to the jury, in effect, ''Whilst it is your duty to ascertain from all the evidence in the case whether or not the plaintiff's disease was produced by the fall she claims to have received, and whilst these learned gentlemen have said that there are many causes that produce such disease, yet in their opinion the plaintiff's trouble was produced by a fall; therefore, if you think these men are worthy of credit, you may base your verdict on their opinion, and find that there was a fall and that it produced this result.'' It in effect authorized the jury to adopt the conclusion drawn by the experts from the evidence, rather than to draw their own conclusions.

We must remember that the allegation that the plaintiff had fallen from the car at all was denied, and the burden of proving it was on the plaintiff. The record does not show that the defendant corporation ever heard of the accident until the suit was brought, a year and a half after it is alleged to have occurred. The plaintiff having in her deposition stated that the car from which she fell was No. 152, the conductor of the car of that number and of the date named was called by defendant as a witness and testified that no such accident occurred under his administration. But the testimony of these expert witnessses went to establish the fact of the alleged fall, which was not a fact they learned from the medical books. Thus the weight of their testimony went into the scales on the question of whether or not there was an accident.

There are cases in which a physician or surgeon

may give his opinion not only as to what might produce a given result, but also as to what in fact did produce the particular result in hand.    But such are cases where no other cause could reasonably have produced the effect.   Instances of this kind are found in murder cases where the cause of the death is the question.   A dead body is found floating in the river, to the eye of the casual observer it is a case of drowning, but a man of science makes an examination and testifies that the condition that would result from drowning is absent, but the condition resulting in death from poison is present, and no other cause that could produce death appears, therefore he may say it was a case of death by poison.   Perhaps even in such case it would be more correct to limit the expert testimony to a statement of the scientific facts, leaving the inevitable conclusion to be drawn by the jury, but when after the scientific facts are proven, there is but one conclusion to be drawn, it is not harmful error to allow the witness to state his conclusion.

But such is very different from the case at bar. Here these learned men tell us that many different causes produce a like result and they do not say that one is even more probable than another, yet they are allowed to say that this injury was produced by a fall and one of them said, in effect, that it was a severe fall.

The defendant's evidence tended to show that the plaintiff was afflicted in this manner before the date of the fall, from which evidence, if believed, the jury would have concluded that, although a fall from a car might produce such a result, yet it did not produce it in this case and that the plaintiff's condition was attributable to some one or another of the many causes that might have produced it.   But when the jury were told by the doctors that the fall did produce it, then, if the jury judged the doctors to be creditable witnesses, it shut off all other inquiry.   If the doctors in the matter

of their opinions had been kept within the realm of their science, the jury would have had the right to weigh their evidence against that of the defendant's witnesses, and credit them in preference to the others, but outside of their field their opinions were mere conclusions drawn from the evidence and were not entitled to be considered at all.

Dr. Snell seemed to realize that he was being asked to invade the province of the jury, and he seemed reluctant to be led beyond the realm of his science. His first answer to the hypothetical question was that if a person was entirely well before he got a fall and was sick immediately afterwards the natural conclusion would be that the illness was due to the fall. This witness, however, was not there to draw natural conclusions; any man of common sense could do that; he was there to tell the jury that which they could not know without the aid of abstruse science. Then he was asked: "Just state what would be the cause of that injury under the facts I have mentioned to you in the question?" His answer seems to indicate surprise at the question, he said, "You want me to account for the condition I found her in when I examined her?" The counsel disclaimed any such purpose and yet repeated his question in such form as to bring this answer: "Then I would say it was due to the fall."

The incompetency of such evidence is forcibly illustrated by the facts of this case. Dr. Robinson did not see the plaintiff until thirteen months after the alleged accident. Dr. Snell did not see her until more than two years thereafter. The former testified that whilst a fall or jar could produce such a result, yet the books taught that such was not likely unless the parts were already weakened by disease, and they both testified that in case of previous healthy condition a displacement by a jar or fall, treated promptly by replacement, would soon result in perfect restoration;

that if neglected for a year or more, the condition would grow from bad to worse and become a permanent affliction. Yet they were allowed to assume the case in the condition they found it, and to say that assuming that she had suffered such a fall as she described the condition in which they found her was the result of that fall.

The view of the law on this subject as above taken conforms to the views this court has taken in other cases. In one of our very recent decisions, Taylor v. Railroad, 185 Mo. 239, after quoting from Judge BLACK in Gutridge v. Railroad, 94 Mo. 1. c. 472, Judge BRACE in Boettger v. Iron Co., 136 Mo. 536, and Judge WILLIAMS in Langston v. Railroad, 147 Mo. 465, all declaring the same doctrine, MARSHALL, J., speaking for the court, said: "It would have been proper to state to the plaintiff's experts the nature and extent of the injuries received by the plaintiff as they appeared at the time of the accident, and then to ask them whether or not in their opinion such injuries might, could or would result in paralysis. The experts having thus given an opinion, it would have been for the jury to find the fact as to whether in this particular case the paralysis was caused as the plaintiff's experts said it might have been caused, or whether it was the result of other causes, as the defendants experts testified might be the case. To the trained legal mind there is a very essential difference between permitting an expert to give an opinion and permitting him to draw a conclusion. The one is the province of a witness; the other is, in the first instance, the special prerogative of the jury. And when a witness is thus permitted by the court to invade the province of the jury, it goes to the jury with the endorsement of the court, and is calculated to make the jury believe that it was proper for the witness to find the fact instead of the jury doing so. The ruling of the

court upon the admission of this testimony was therefore erroneous.''

Other decisions of this court cited in the brief of appellant are to the same effect: Gavisk v. Railroad, 49 Mo. 276; Koons v. Railroad, 65 Mo. 597; Eubank v. Edina, 88 Mo. 655; Koenig v. Railroad, 173 Mo. 698.

The case of Wood v. Railroad, 181 Mo. 433, to which we are referred by respondent, does not conflict with the views taken of this subject in the cases above cited. The hypothetical question therein discussed and approved did not ask the expert witness if the fall in that case produced the disease under which the plaintiff suffered, but after stating facts assumed, it concluded thus: ''I will get you to state whether or not the injury that I have described was, in your opinion— the injury and the fall—was, in your opinion, in her case, sufficient to produce the disease of neurasthenia, which you found her to be suffering with upon your examination at Kansas City last fall?'' The question was not did the fall produce that disease, but was it in your opinion sufficient to produce it. That question was entirely competent under the rules of law we have above declared. In the case at bar the question was not, was the fall from the street car described sufficient to have produced the displacement of the uterus? but it was, Did the fall produce it? An affirmative answer to the question in the one form, though credited as true, would have still left the jury to find from all the evidence in the case whether or not the affliction under which the witness found the plaintiff suffering was caused by a fall from a street car; and affirmative answer to the question in the other form, if credited, would have closed the inquiry.

In O'Neill v. Kansas City, 178 Mo. 91, to which we are also referred, the hypothetical question did contain this objectionable feature, but there was no objection made to it on that ground. This court in passing

on the question said: "The objection was so general that it did not give the trial court any opportunity to know what in the opinion of the counsel making it, was the vice of the hypothetical question, either in what it contained or what it omitted, and when invited to specify his objection he declined to do so." That case, therefore, does not sustain the trial court's ruling in the case at bar on this point. The court erred in overruling the defendant's objections to the hypothetical questions.

V. This suit was begun March 4th, 1902. On March 29th, 1902, the defendant took the deposition of the plaintiff, her counsel being present. At the trial, on cross-examination of the plaintiff, the attorney for the defendant confronted her with this deposition and attempted by calling her attention to passages in it to contradict her on points on which she had testified. To this the counsel for the plaintiff objected on the ground that the paper referred to was not a deposition. The court ruled that the paper could not be used in the cross-examination of the witness until it had been introduced in evidence; then the defendant offered it in evidence, and the objection was renewed that it was no deposition. A colloquy then ensued between the court, the counsel on both sides, and the plaintiff, from which we gather that the deposition was taken before a notary in the office of defendant's attorney with the plaintiff's attorney present; after it was written out and ready to be signed she was asked to go to the office of the defendant's attorney to sign it. She went as requested, but refused to sign it until some corrections were made. The paper was then taken to the office of her attorney and at her request certain corrections were made by her attorney, and it was then signed by her; it was never signed or certified by the notary.

The colloquy continued: Attorney for Defendant: "It is offered as the written statement of the witness."

The Court: "What right has any one to take a deposition, to suppress it and then to come in and try to evade the law which says it must be returned to the clerk's office duly sealed, then come in and try to introduce it when they could not introduce it as a deposition because under the law it must be first filed; you have no right to cross-examine upon it until it has been introduced in evidence."

To which ruling and action of the court, the defendant at the time duly excepted.

Attorney for Defendant: "The object of offering this paper is as the signed statement of the witness, and, as the attorney for the company, I desire to say that there has been no suppression of the deposition so far as we are concerned; that counsel for plaintiff was notified and was present when it was taken; they corrected it in their own office; it was signed in their own office and sent to our office after it was corrected and signed."

The Court: "Why was it not filed, as the law requires?"

Attorney for Plaintiff: "Why wasn't it sworn to."

The Court: "The law requires the notary public to affix the certificate to it in his own hands, sign it, seal it, and send it."

Attorney for Defendant: "Plaintiff's counsel had a copy furnished him."

The Court: "Still it is not a deposition unless it has been properly returned. And as I have had occasion to remark before, the taking of depositions in that way is an abuse."

To which ruling and action and remarks of the court, the defendant at the time duly excepted.

Although the paper in the absence of the certifi-

cate of the notary did not possess the character of a deposition, still it was a paper signed by the plaintiff purporting to give an account of the accident, and if it contained statements contradictory of statements made by her on the witness stand the defendant had a right to draw her attention to it and cross-examine her in regard to it.

The court judged the document by the standard of a deposition and ruled it out because it did not reach that standard. That was not a correct standard; the document did not derive its significance from the fact of being a deposition, but from the fact that it was a written document containing a statement of her case which she had at a former time made and it was signed by her. If it had been in all respects in the form of a deposition it might have been regarded with more solemnity, but even as an unsworn written statement signed by the plaintiff, if it contradicted in a material point anything that she stated on the witness stand, the defendant had a right to confront her with it, and ask her to account for the contradiction. This is a legitimate method when fairly used in which to weaken the force of an adversary's witness, especially of an adversary herself. While her answers to questions relating to her signature to the paper were not entirely ingenuous, yet they were sufficient to show that she had signed the paper in her counsel's office, in his presence, and after he had made the corrections in it which she demanded before signing. Under those circumstances the court ought to have allowed the defendant's counsel to confront the plaintiff with the document and cross-examine her on it, allowing her and her counsel, of course, ample opportunity to see the document, see that it contained the supposed contradictions, or admissions. The trial judge can direct the method of such a cross-examination to prevent surprise or unfair advantage.

We do not think that the counsel for the defendant

deserved the censure that he received from the court in the course of this colloquy, and coming as it did in the presence of the jury was quite liable to have influenced the jury to the defendant's prejudice.    The censure consisted in the implication that the counsel had suppressed the deposition and had abused his privilege.

We must remember that from the standpoint of the defendant's testimony, at least, the defendant corporation never heard of this accident until the suit was filed, some thirteen months after it is alleged to have occurred.    It was, therefore, the privilege of the defendant to institute a legitimate inquiry into the case; where could it better go for information than to the plaintiff herself?    The law gave the defendant the right to take plaintiff's deposition, and the defendant's attorney was only performing his duty when he caused the plaintiff to come before a notary and undergo an examination under oath.

But the point of the criticism was that the deposition when taken was not filed in court, but was retained by the attorney for the defendant in his possession. The attorney had no right to file it in court until it had been certified by the notary.    It was the notary's duty to write down the questions and answers as they occurred and, after the signing by the witness, to certify its correctness and file it in court.    The notary did not certify it and did not file it—why, the record does not show.    Many things may have been the cause—neglect, sickness, absence, or even possibly the notary may have refused to certify it as correct after it had been taken out of his office and the above-mentioned changes had been made in it.    But whatever may have been the cause, there was no possible injury to the plaintiff in failing to certify and file the deposition.    The plaintiff could not have used it as a deposition, because, she was present in court, and defendant could not have made

191 Sup—24

use of it as such for the same reason. The only possible use that could have been made of it was that which defendant offered to make, not as a deposition, but a statement. And so far as the idea of suppressing it, or withholding it from the plaintiff goes, there is no room for that, because the plaintiff's attorney had a copy of it all the while.

The court erred in its ruling on that point.

VI. Appellant insists that the damages awarded are excessive. Under this head we may consider also the assignments of error relating to instructions on the measure of damages.

If the plaintiff's affliction as shown by the testimony in her behalf was the result of the defendant's negligence we cannot say the amount of the award, $5,000, was excessive.

The proposition of law for which the defendant contends is, that if the plaintiff suffered the fall she claims she did, it was her duty to have exercised reasonable care in seeking medical or surgical aid, and that if she neglected to do so and thereby her injury was aggravated she is not entitled to recover for the aggravated injury. That is a correct proposition of law. In 1 Thompson on Negligence, section 202, it is stated thus:

"Undoubtedly the person injured is bound to use ordinary care in treating the injury, and cannot recover from the author of the injury enhanced damages growing out of his want of ordinary care in procuring medical aid to treat it. In other words, if he neglects to use such means to effect a recovery as an ordinarily prudent person would use under like circumstances, he cannot recover damages for any aggravation of his injury, growing out of such neglect."

The law on this subject is treated by the law-writers under the head of contributory negligence, and the distinction is drawn between contributory negligence

which defeats the action, which is negligence which contributes to the happening of the accident; and contributory negligence which occurs after the accident, but which increases the suffering. [1 Thompson on Negligence, sec. 201.] In either case before the action can be defeated or the measure of damages curtailed, on such a plea, the plaintiff must be shown to have been guilty of negligence which contributed to the result. The law did not in this case unconditionally demand of the plaintiff that she obtain surgical aid, or charge on her the consequences of failure to obtain it, because that might have been beyond her power, but it did demand that she use reasonable care to obtain such aid and it withholds from her the right to recover for what she may have suffered in consequence of her failure to use reasonable care. This distinction must be carried in mind when we come to consider the instructions bearing on this subject.

The testimony of the plaintiff's expert witnesses was to the effect that if she had been in a healthy condition up to the time she received the fall and had suffered the displacement by the fall, prompt surgical aid would probably in a short while have effected a complete cure.

Under that testimony the question arises, did the plaintiff exercise ordinary care in seeking medical or surgical aid, and is she entitled to recover as for permanent injury? She did not seek medical aid until thirteen months had passed and her physicians testified that the probable effect of failure to obtain such aid was an aggravation of the affliction. The reason she gave for her failure to call a physician was that she had no means to pay him and that she did not apply to the defendant in the trouble because she hoped all the while she would get better. Whether that was sufficient to acquit her of negligence was a question for the jury.

The court refused defendant's request for instructions 11 and 12. Instruction 11 was that, "If the plaintiff's injuries were such that medical treatment was proper and necessary, and that reasonable and necessary medical treatment would have lessened or cured said injuries in whole or in part," then it was her duty to have procured such treatment, and if she failed to do so her recovery must be limited to such damages as she would have sustained if she had procured such treatment.

Instruction 12, declared that "it was the duty of plaintiff to exercise reasonable care and diligence to nurse, treat, and care for whatever injuries she sustained, if any, and to procure reasonable, proper, and necessary medical treatment," etc., and if she failed to do so and her injuries were aggravated thereby she could recover only enough to compensate her for the damages she would have sustained if she had used such care and obtained such treatment.

The fault of those instructions is that they make the fact of the failure to obtain the medical services contributory negligence, instead of failure on her part to exercise ordinary care to obtain such services; it leaves out of view her plea that she was unable to employ a physician. For that reason the court was right in refusing those instructions.

At the request of the plaintiff the court gave this instruction: "1. If you find for the plaintiff, you should assess her damages at such sum as you believe from the evidence will compensate her for the injuries, if any, received by the negligent acts and conduct, if any, of the defendant shown in evidence, and in estimating her damages, you should take into consideration the bodily pain and mental anguish suffered by her, if any, as the results of such acts and conduct aforesaid, and the pain and anguish, if any, which you believe from the evidence will reasonably result to her

in the future from such injuries and the extent of her disability, if any, by reason of said injuries and the extent to which you reasonably believe from the evidence, if you so believe, she will be disabled during the future of her life by reason of said injuries, and you should award her such sum as in your opinion will reasonably compensate her for all such injuries, not exceeding the sum of seven thousand five hundred dollars.''

And of its own motion the court gave this: ''1. The court instructs the jury that if you believe from the evidence that plaintiff's injuries complained of, if any there were, were aggravated and recovery therefrom retarded by any unreasonable delay on her part to secure the services of a physician, then you should consider these facts, if you find for the plaintiff, in mitigation of damages, and not allow her any damages for any aggravation of said injuries arising from such delay.''

Those instructions were doubtless intended to be considered together, the one qualifying the other, but they are liable to be considered as contradictory, the one of the other. In the one the jury is directed to award damages as for a permanent injury, if they find it will be permanent, without considering whether the character of permanency was the result of the accident or of failure to obtain medical treatment, and in the other they are directed not to award damages for an aggravated condition of the plaintiff's malady if it was caused by an unreasonable delay in obtaining medical aid. On a retrial of the case that apparent inharmony can be removed by remodelling the instructions.

VII. The petition alleged two acts of negligence on the part of defendant: first, in suddenly starting the car while the plaintiff was in the act of alighting; second, in having in its service the conductor of this car who was incompetent because of intoxication, and whose incompetence for that reason rendered him neg-

ligent of his duties and caused him to give the signal in obedience to which the car was negligently started and the plaintiff thrown to the ground. There was no evidence to sustain the second charge. The defendant asked three instructions on that point, as follows: "14. The court instructs the jury that there is no evidence that the intoxication or drunkenness of the conductor, if proven, was the proximate cause of the injuries complained of, and on that issue, your finding will be for the defendant. 15. The court instructs the jury that there is no evidence that the incompetency of the conductor was the proximate cause of the injuries complained of, and on that issue your finding will be for the defendant. 16. The court instructs the jury that there is no evidence that the conductor was incompetent to perform his duties and on that issue your finding will be for the defendant."

The court gave 14, but refused 15 and 16, and this is assigned for error.

Instruction 14 seems to cover the point; the petition does not charge general incompetency, but that the conductor was incompetent because of his habit of intoxication, and by instruction 14 that was withdrawn from the jury; 15 and 16 contained the same proposition in other forms.

The jury have really nothing to do with the pleadings in the case; the pleadings though usually read in the presence of the jury are addressed to the court; the jury should be informed by the instructions of the issues they are to try. The only issue of negligence submitted to the jury under the instruction was that relating to the sudden starting of the car while the plaintiff was in the act of alighting. That was the only issue on that point contained in the instruction given at the request of the plaintiff, and the fourth instruction given at the request of the defendant practically limited the issue of negligence to that act.

Defendant has no cause to complain of the refusal of instructions 15 and 16.

VIII.  In the motion for a new trial there were many grounds assigned, among them was that the counsel for plaintiff in his closing argument made certain remarks which are copied in the-motion.  Without copying here all of the remarks complained of it is sufficient for the purpose of considering this assignment of error to say that the remarks contained by unmistakable intimation the charge that a witness who had been summoned by the plaintiff was bribed by the defendant to swear falsely as she did, and that the counsel followed up the charge with these remarks:

"I am satisfied that the mind of every juror in this jury box was impressed the same as I was; just exactly the same as I was, and revolted at the idea; and revolted at the stupendous disgrace that it brought upon the administration of justice by such methods as that.

"I say that the intensity of feeling which I have in this case arises from those two thoughts and from the slurs and insinuations and accusations brought against this poor woman who was unable to go down into the country, and bring the witnesses here; that this great corporation can go through the State of Missouri and the United States and bring their witnesses as they desire, as they have done in this case.

"Who is on the other side of this case?  Here is the Metropolitan Street Railway Company, whose tracks gridiron this whole city, occupying, if you please, the central part of almost every prominent street in Kansas City, Missouri, whose duty it is to carry passengers from one place to another for hire, and who obtain from the citizens of this town what wealth they expend on these great tracks, and all the wealth that they pay upon this great amount of stock

and all that they pay upon the great amount of bonds— coming here into this court."

It was also stated in the motion for a new trial under this point that timely objections were interposed by the defendant, but overruled by the court and exceptions taken. Affidavits were filed in support of this specification in the motion for a new trial, one of which was by a stenographer who said that he was present and took down the remarks as they were made and that the report of them was correct. Other affidavits of persons who said that they heard the remarks were filed verifying the stenographer's report of them. Affidavits contra were filed, one of which was of the counsel who was said to have made the remarks, in which affidavit it is said that: "the purported stenographic report of said argument attached to and embodied in defendant's motion for a new trial in this case, is inaccurate, confused and bungling and does not truly state the verbiage or substance of said argument." The other affidavits filed by plaintiff were to the same effect.

The matter complained of under this assignment is not before us in such form that we can pass judgment on it. It is not stated in the bill of exceptions that these remarks were made, the most that can be said of it is that the bill of exceptions contains affidavits tending to prove that the remarks were made.

The only manner in which such a matter can be brought before this court for its judgment is by having the bill of exceptions to state that it occurred. It appears from the record that the judge who signed the bill of exceptions was not the judge who tried the cause; the affidavits were perhaps designed as evidence for his consideration on the disputed fact; but they are not for our consideration. We only know what occurred at the trial by reading the statements in the bill of exceptions.

The judgment is reversed and the cause remanded to be retried according to the views herein expressed.

All concur.