MARGARET    W.    TORREYSON,  · Respondent,    v. UNITED    RAILWAYS    COMPANY    OF    ST. LOUIS, Appellant.

Springfield Court of Appeals, June 6, 1910.

1.   INSTRUCTIONS: Personal Injuries: Measure of Damages.  In a suit for damages for personal injuries, an instruction on the measure of damages is examined and held that, while it would have been better to have submitted the elements of damages hypothetically, yet as it could not be reasonably inferred from the language used that the jury might have been misled thereby, it was unobjectionable.

————: Technical Errors.  The requirements of justice do not make it necessary that instructions be drawn with such technical nicety as to be entirely free from astute criticism. The test should be whether or not the instruction will give the jury a correct understanding of the rules by which they are to determine the issues involved.

3.   EVIDENCE: Personal Injuries: Parents Depending on Plaintiff for Support.  In a suit for damages for personal injuries, it is error to admit testimony that the parents of plaintiff were dependent upon her for support.

4.   ————: Deposition Taken Before Commissioner: Objections to Testimony How Saved.  Where testimony is taken before a commissioner appointed by the court, as is authorized by section 2883, Revised Statutes 1899, the statutes provide that where testimony on objection is excluded, the party ruled against may have the ruling submitted to and passed upon by the court before the taking of the testimony is concluded, but the

statute is silent as to the steps to be taken by the objecting party, in case the objection to the testimony is overruled. *Held*, that the objections may be noted in the depositions and that the court upon trial may pass upon the objections the same as if the witness had been introduced at the trial and the objections there made.

5. ————: **Expert Testimony: Physician's Opinion.** In a suit for damages for personal injuries, it is competent for a physician who had treated plaintiff to testify what, in his judgment, was plaintiff's affliction, and whether or not it might have been causel by an injury such as plaintiff had received.

6. **PERSONAL INJURIES: Excessive Verdict.** In a suit for damages for personal injuries, a verdict for $5000 was held not excessive where the evidence tended to show that prior to the injury plaintiff was in good health, 44 years of age, earning $35 to $40 per month as a teacher; that her injuries were permanent; that she will in all probability possess no capacity to earn money during the remainder of her lifetime and that she had suffered great pain as the result of her injury.

7. **PRACTICE: Improper Argument of Counsel.** In a suit against a street car company for damages for personal injury, the argument of plaintiff's counsel is reviewed and criticised as being unwarranted and not within the record; and this improper argument was one of the grounds for which the judgment was reversed, the case, being a close one, and only nine of the jurymen having signed the verdict.

8. ————: ————. While counsel ought to be allowed all legitimate latitude in presenting a client's case to a jury, yet he should not be permitted to go beyond the testimony and the limit of legitimate argument therefrom.

Appeal from the St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest, Morton Jourdan* and *T. E. Francis* for appellant.

(1) Plaintiff's instruction number 2 is erroneous in that it assumes that plaintiff was injured, and that she suffered mental and physical pain as a result thereof. These matters were disputed issues of fact

and should have been submitted hypothetically to the jury. Plummer v. Milan, 70 Mo. App. 598; Evans v. Joplin, 76 Mo. App. 20; Fullerton v. Fordyce, 121 Mo. 1; Freeman v. Street Ry., 95 Mo. App. 94. (2) The court erred in admitting, over defendant's objections, testimony for plaintiff tending to prove she gave attention to her father and mother during their last illness and was their main dependence. This evidence was immaterial to the issues, and was prejudicial to the defendant, because it was calculated to arouse the sympathy of the jury for the plaintiff. Stephens v. Railroad, 96 Mo. 214; Dayharsh v. Railroad, 103 Mo. 578; Mahoney v. Railroad, 168 Mo. 200; Williams v. Railroad, 123 Mo. 584. (3) The court erred in permitting witness Dr. Taylor and witness Dr. Butler to testify plaintiff was suffering from a nervous condition due to a bodily injury, and thereby invade the province of the jury. Glasgow v. Street Railway, 191 Mo. 347; Taylor v. Street Ry., 185 Mo. 239; Smart v. Kansas City, 208 Mo. 162; Thomas v. Street Ry., 125 Mo. App. 131; Roscoe v. Street Railway, 202 Mo. 576. (4) Plaintiff's counsel were guilty of gross misconduct in their argument to the jury, and the court erred in refusing to rebuke them therefor. Thompson on Trials, secs. 958, 969; Massingale v. Rice, 94 Mo. App. 430; Haynes v. Trenton, 108 Mo. 133; Tuck v. Traction Co., 124 S. W. 1079.

*L. P. Crigler* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) There is no dispute about the fact of plaintiff's injury, and where the injury is of such a nature that pain and mental anguish necessarily follow its infliction, an instruction may assume the existence of injury, and that it produced pain and anguish. Dunn v. Railroad, 81 Mo. App. 42; Prewitt v. Railroad, 134 Mo. 615; McCarthy v. Transit Co., 108 Mo. App. 318;

Cobb v. Railroad, 149 Mo. 135. (2) The evidence which defendant claims was calculated to arouse the sympathy of the jury related to the prior physical ability of plaintiff, and was clearly admissible; but if such testimony was improper, defendant cannot allege error because the testimony appears in a deposition taken before a special commissioner, was not objected to when offered before said commissioner, and defendant waived its right to object, and, further, defendant assigned no reason for the objection made in the circuit court. R. S. 1899, sec. 2883; Malone v. Hawley, 46 Cal. 409; Railroad v. Ampey, 93 Ga. 108; Corrigan v. Dry Dock Co. (N. Y.), 14 Daly, 120; Werner v. Railroad, 105 Wis. 300; Caldwell v. Murphy, 11 N. Y. 416; Hoselton v. Hoselton, 166 Mo. 182; Lumber Co. v. Rogers, 145 Mo. 445; Roe v. Bank, 167 Mo. 406; Rice v. Waddill, 168 Mo. 99; Tygard v. Falor, 163 Mo. 234; Hall v. Gallemore, 138 Mo. 638; State v. Brown, 168 Mo. 449. (3) The court did not permit plaintiff's experts to invade the province of the jury. It is always competent for a medical expert to form and express a judgment or opinion as to the physical condition of a patient he has examined or treated. 5 Ency. of Evidence, 580; Robinson v. Railway, 103 Mo. App. 110; Squires v. Chillicothe, 89 Mo. 230; Barr v. Kansas City, 121 Mo. 22; 7 Ency. of Evidence, 402.

COX, J.—Action for damages for injuries alleged to have resulted to plaintiff by being thrown upon the pavement in the city of St. Louis, by reason of defendant starting its street car, upon which plaintiff was riding, with a jerk while she was in the act of alighting therefrom. The petition alleged that as a result of said fall she was painfully, seriously and permanently injured. That her body was bruised, scarred and injured, her spine and back were sprained, wrenched, bruised and injured; that her entire nervous system was disordered, shocked and greatly injured, and that all of

her injuries are permanent and incurable; that as a result of said injuries she is now a cripple and will be for life; that she has suffered great bodily pain; alleges loss of time and disability to earn money in the future; the incurring of large expenses for medicine, hospital and nurse attention, etc. Trial was had before a jury, resulting in a verdict by nine jurors in plaintiff's favor, and her damages assessed at five thousand dollars, and defendant has appealed.

The evidence on the part of plaintiff is that she was a resident of Martinsburg, Missouri; that her occupation was that of a school teacher; that she was single and unmarried, and forty-four years of age; that she was earning from thirty-five to forty dollars per month; that on July 29, 1906, she was a passenger on the defendant's street car, and that in attempting to alight therefrom, and while upon the steps of the car, the car was started with a sudden jerk, and she was thrown to the pavement and injured; that she was dazed and had a scalp wound in the back of her head; that she was first taken to the Buckingham Club, where Dr. Butler was called to attend her, and she was from there removed to the home of Charles Rawlings on Page avenue, and the next day thereafter was removed to St. Luke's Hospital where she remained for nine weeks and was then taken to the home of her brother at Laddonia, Missouri, where she remained until the time of the trial. Dr. Butler and Dr. Fry attended her while she was at the hospital, and after being removed to Laddonia she was attended by Dr. Taylor and other physicians. Her testimony and that of other witnesses who were familiar with her condition was that prior to the accident she was in good health, taught school continuously and performed household labor, and that since this injury she had been unable to walk without the aid of a crutch, and there was evidence tending to show that her nervous system was wrecked, and that this condition was probably permanent.

On the part of defendant, the conductor on the car at the time, testified that the car had an entrance and steps in the middle, and that at the time of the alleged accident the car had stopped for the purpose of permitting passengers to alight; that he was on the rear platform, leaning over the railing watching the passengers alight; that two ladies alighted from the steps at the middle of the car and had reached the curb, and that he could see no other passengers proposing to alight at that time, and gave a signal and the car started, and immediately after the car started, the plaintiff in this case passed down the steps quickly and stepped off while the car was in motion and fell; that the car did not start with a jerk, and that the cause of plaintiff's fall was her attempting to get off while the car was in motion. Three passengers who were on the platform with the conductor at the time, testified that the car started in the usual way without any noticeable jerk, and that they did not see the plaintiff alight, and as to whether she was attempting to alight while the car was standing, or did so after the car started, they had no knowledge. Physicians were appointed by the court to examine plaintiff. They did so, and, on behalf of defendant, testified that they found no indications of permanent injuries and gave it as their opinion that the nervousness with which she was apparently suffering was either assumed on her part, or was the result of what they termed suggestion, intimating that, in their opinion, the nervous affliction would subside very soon after the termination of this law suit.

Defendant assigns as error the instruction of the court on the measure of damages, error in admitting testimony, the excessiveness of the verdict and improper remarks of counsel in their argument to the jury.

The instruction complained of, given on behalf of plaintiff, is as follows:

"If you find·for the plaintiff, in estimating and determining the amount of her damages you should take into consideration, in connection with all the facts and circumstances in evidence, such reasonable sums, if any, as you believe she necessarily paid out, or became obligated for, because of medical treatment and hospital charges on account of her injuries; the bodily pain and suffering and mental anguish endured by her, resulting from the injuries received; the character and extent of her injuries and whether they are permanent in their nature; the extent, if any, which she has been prevented and disabled by reason of such injuries from working and earning a livelihood; and if from the evidence you believe and find that her injuries are reasonably certain to cause her pain and anguish in the future and reasonably certain to impair or lessen her ability to work or labor in the future, you should take said facts into consideration also; and if you find for plaintiff you should find for her in such sum as in your judgment, under all the evidence in the case, will reasonably compensate her for the injuries received, but not to exceed the sum named in the petition; to-wit: thirty-five thousand dollars."

The objection is made to this instruction that it assumes that plaintiff was injured and that she suffered mental and physical pain as a result thereof. It will be noticed that this instruction tells the jury what they may take into consideration in estimating plaintiff's damages, provided they find for the plaintiff. Instruction number one told the jury that in order to find for the plaintiff they must find that defendant started the car with a jerk before plaintiff had time to alight therefrom, and thereby caused the plaintiff to be thrown from said car and bruised and injured. We do not think the jury would be led to believe from reading this instruction that they were authorized to assess any damages to plaintiff for any disease from which she might have been suffering or any physical disability

which she might then have that was not a direct result of the injury inflicted upon her by the fall which she claimed to have received, and they were required also to find for the plaintiff before they could assess any damages. To do this they would have to find that defendant was guilty of negligence in starting the car while she was attempting to alight therefrom, and by reason thereof, she was thrown to the street, bruised and injured. While it might have been well enough to have submitted even in this instruction the elements of damages hypothetically, yet unless the language of the instruction is such that it may be reasonably inferred therefrom that the jury might have been misled thereby, then it was unobjectionable. As was stated by Judge GOODE in McCarthy v. St. Louis Transit Co., 108 Mo. App. 317-319, 83 S. W. 298, "There is much profitless chaffering over instructions on the measure of damages," and we do not think the court should strain the requirements of justice by requiring the instructions to be drawn with such technical nicety as to be entirely free from astute criticism, but we should rather be guided by the test as to whether or not the jury would get from the instructions a correct understanding of the rules by which they were to determine the issues involved. We do not think the instruction open to the objection made against it.

Defendant contends that error was committed by the court in admitting testimony tending to prove that plaintiff waited upon and gave attention to her father and mother during their last illness, and was their main dependence. It was not competent to show that plaintiff ministered to the wants of her parents any further than it may have been incidental to the fact that she was physically able to perform household work, and testimony as to whether her father and mother depended upon her for support was not competent, and ought not to have been admitted in this case. This testimony appears in the deposition of a witness that

was taken before a commissioner appointed for that purpose by the court under authority of section 2883, Revised Statutes of 1899, and it is contended by respondent, and the trial court so held, that this evidence having been in the form of a deposition taken before a commissioner appointed by the court, no objection having been made at the time the testimony was taken by the commissioner, that objection could not be made at the time of the trial. In this contention, we think respondent is right. The section alluded to provides: "That such special commissioner shall have power and authority to hear and determine all objections to testimony and evidence and to admit and exclude the same in the same manner, and to the same extent as the circuit court might in a trial of said cause before said circuit court." Then it further provides that in case an objection to testimony is sustained by the commissioner, the party against whom the ruling is made, shall have the right to require the matter to be certified to the circuit court and the taking of depositions continued until the ruling of the circuit court can be had upon the objection, and if the circuit court should hold that the objection should not have been sustained, it shall then be the duty of the commissioner, upon receiving a certification of that fact, to proceed to take the testimony. While the statute is silent as to what shall be done in case an objection is overruled and testimony taken, a reasonable construction would seem to us to be that the party whose objection was overruled before the commissioner, should have a right at sometime to have the circuit court pass upon that objection. The statute not having provided a way by which the party may have it passed upon while the taking of the deposition is still pending before the commissioner, we hold that in that case it would be competent for the circuit court to pass upon the commissioner's action in overruling an objection to testimony at the trial, and in order that he might do so, it would be the duty of

the party making the objection to specify the objection, upon which he wished to rely, to the commissioner, and have his objection noted in the deposition, then the court upon trial, could pass upon that objection the same as if the witness had been introduced at the trial and the objection there made. In this case it appears that objection was made at the time of the taking of the deposition as to some of this testimony, and, hence, all that testimony which had been objected to and which related to the fact that her parents may have been dependent upon her, or that she paid their expenses, should have been excluded.

It is next contended that the court committed error in permitting the physicians who attended the plaintiff to testify as to her condition and its probable cause. The testimony complained of we copy from appellant's brief as follows:

The witness, Dr. Taylor, was asked the following question: "Q. Now, doctor, I wish you would tell the jury, in your own way, what, in your judgment, is the trouble with Miss Torreyson, and what is the probable cause of it. Mr. Jourdan: I object to that as calling for conclusion. That is the province of the jury. The court: I think the doctor is entitled to give an opinion as to what the plaintiff suffered from and what is the probable cause of it and the probable duration. Objection overruled. A. Well, in forming our opinion, of course, we have got to take the history of the case into consideration. From the history of the case, I would call it a traumatic neuritis."

Dr. Butler, another one of her witnesses, testified as follows: "Q. Now, you may state, doctor, in general terms, what disease or affliction, in your judgment, Miss Torreyson is now suffering from? A. Why, she is suffering from a nervous condition due to an injury— bodily injury, which is usually classed as traumatic neurosis. Mr. Jourdan: I move that the answer be stricken out. That is the province of the jury. The doc-

tor has no right to state a conclusion. Motion overruled. Exception saved. As sustaining appellant's contention that his objection to this testimony should have been sustained, we are cited to the following cases. [Glasgow v. Street Railway Co., 191 Mo. 347-358, 89 S. W. 915; Taylor v. Street Railway Co., 185 Mo. 239-255, 84 S. W. 873; Smart v. Kansas City, 208 Mo. 162-202, 105 S. W. 709; Thomas v. Street Ry., 125 Mo. App. 131-138, 100 S. W. 1121; Roscoe v. Street Ry., 202 Mo. 576-594, 101 S. W. 32.]

Without attempting to review these cases in detail we think a careful examination of them will demonstrate that the difficulty in those cases was that in the evidence complained of, the witnesses were permitted to state, in effect, that the condition of the plaintiff did, as a matter of fact, result from the injury which was the basis of the suit, instead of confining the witnesses' to an expression of opinion as to whether or not such an injury might produce the physical condition found to exist in the party alleged to have been injured at the time the physician made the examination, or as stated in the hypothetical question presented to the witness, and it was upon that ground that the evidence in those cases was held to have been erroneously admitted. It has never been held that a physician who had treated a patient as doctors Butler and Taylor did this plaintiff, cannot state what, in his judgment, was plaintiff's affliction and whether it might be caused by an injury such as plaintiff alleged she received. These physicians did not state that plaintiff's condition was caused by the fall upon the street of which she complained in her petition, but only gave it as their opinion that it was caused by a physical injury. This was competent, and does not violate the rule announced in the cases above cited. [Robinson v. Sub-Railway Co., 103 Mo. App. 110, 77 S. W. 93.]

It is next contended that the verdict in this case is excessive. With this contention we do not agree.

There was evidence tending to show that this plaintiff, prior to this injury, was in good health, forty-four years of age, earning from thirty-five to forty dollars per month for eight months in the year, teaching school; that her injuries were permanent, and that she will, in all probability, possess no capacity to earn money during the remaining years of her life; that she has suffered great pain as a result of the injury, and if that testimony be true, the verdict is, in no sense, excessive.

Lastly it is contended that plaintiff's counsel were guilty of gross misconduct in their argument to the jury. In the opening argument, in behalf of plaintiff, the attorney made some remarks about this being a "day of great corporations and great millionaires and great things." An objection was made which was sustained, and later on the statement was made by the same counsel, "Well, in this great financial day the admeasurement of a certain sum of money is not like it was when you and I were boys." Objection was made to this remark, but counsel was allowed to proceed. In the closing argument, the following statement was objected to.

"I have no criticism to make of that conductor. He has the instinct of human nature in him. You never saw a man whose careless conduct laid a human being low, either by cutting off a leg, or an arm, and leaving them prostrate in the street, that could look upon that bleeding body and say: 'Yes, it was my wrong; I did it.' When a man realizes that it is his misconduct, that he is at fault and blamable for the woes and sorrows of another, he says, 'Avaunt! Avaunt! quit my sight; I am not responsible for it; she did it herself.' He would be more than human if he had the power to come right up and say: 'Yes, it is my act that injured this girl.' Why, sir, he couldn't look into the pale and quivering face of that girl and be human and say: 'Yes, I did it.' No, he had nothing to say. 'I didn't

do it. I won't excuse myself.' You know, gentlemen, that there even might be a criminal responsibility for negligence that will make a man shield himself." Mr. Jourdan: "I except to that." The court: "Note the exception." Mr. Jourdan: "I except to the failure of the court to rebuke counsel." "She (plaintiff) lived up there in that community so that she commanded the respect and admiration of everybody, and she sought employment not only there, but elsewhere. She would go out into the world and work eight or nine months and make something for herself, and then when the time for vacation came on she would get some enjoyment out of this world. Where is she now? She is absolutely fatherless, motherless, helpless, penniless, a cripple to go down to the grave." Mr. Jourdan: "I except to that statement." The court: "The reporter will note the exception." Mr. Jourdan: "I except further to the court's failure to rebuke counsel." The court: "Very well."

The point is made that this line of argument and the use of the language was improper and calculated to arouse the sympathies of the jury and inflame them against the defendant, and might lead them to return a verdict which they otherwise would not have returned. In this connection we will note that this record shows that the plaintiff was present in the court room, during the trial, in an invalid chair, propped up with pillows and evidently had the appearance of being physically in a bad condition, and, in view of this fact, it seems to us that the language of counsel was entirely uncalled for, and unwarranted from every point of view, and if it had any influence at all it could only have had the effect to draw the minds of the jury away from the evidence and the instructions of the court, and to fix them upon the plaintiff and her condition, and its only effect could have been to have aroused their sympathy, and led them away from their duty under the law and the oath which they had taken. Counsel should be

careful, in all cases, to keep within the record, and, especially is this true under the circumstances detailed in this case. Counsel should remember that the average juryman is no less free from the liability to be swayed from the path of duty by feelings of sympathy than are men in other situations. While we believe that counsel ought to be allowed all legitimate latitude in presenting his client's case to the jury, yet he should not be permitted to go beyond the testimony and the limit of legitimate argument therefrom in order to seek to secure from a jury a verdict unwarranted by the evidence and the law applicable thereto. This court has, in the recent cases of Brady v. Springfield Traction Co., 124 S. W. 1070, and Tuck v. Springfield Traction Co., 124 S. W. 1079, expressed its disapproval of the acts of counsel in transgressing the rule in argument to the jury, and while we found in those cases that notwithstanding the error in that respect, the judgment was for the right party and affirmed the judgment of the lower court, we also said in the Brady case, "If this were a close case upon the evidence, or the damages assessed were unreasonably high, or there was anything in the case to indicate that the verdict was the result of those remarks of counsel rather than a fair consideration of the testimony, we should not hesitate to reverse the case upon that ground." In this case, when we consider the conditions and surroundings under which these remarks were made, and the fact that the verdict rendered for plaintiff was not a unanimous verdict, but was returned by nine jurors only, we cannot say in this case that the verdict did not result from the remarks of counsel, and for that reason we hold that in this case, the action of the counsel above set out was reversible error.

For the errors noted, the judgment will be reversed and the cause remanded. All concur.