## LIZZIE E. JEROME, Respondent, v. UNITED RAIL-WAYS COMPANY OF ST. LOUIS, Appellant.

### St. Louis Court of Appeals, January 24, 1911.

1. **CARRIERS OF PASSENGERS: Street Railways: Injury to Passenger: Passenger Alighting.** In an action for injuries received by a passenger on a street car, by reason of the sudden starting of the car while plaintiff was alighting from it, an instruction directing the jury to find for plaintiff, if they believed the car stopped at a certain avenue to permit her to alight from it, and that while she was doing so, with reasonable expedition, but before she had fully alighted, defendant's servants caused the car to start forward with a sudden jerk, and thereby caused plaintiff's injury, was not erroneous in omitting to require the jury to further find that the car was not stopped a reasonable length of time to permit plaintiff to alight, since, under the circumstances hypothesized, the high degree of care devolved by the law upon the carrier required that its servants should see and know that the passenger alighting had succeeded in doing so in safety, before starting the car.

2. **EVIDENCE: Expert Testimony: Physicians.** A physician, duly qualified as an expert, may as a general rule testify as to the probable results of an injury.

3. ———: ———: ———: **Invading Jury's Province.** A physician, who has examined the plaintiff, may give his opinion, based upon the objective symptoms discovered, as to whether plaintiff will suffer pain from the injury in the future; such testimony not being an invasion of the province of the jury.

4. ———: ———: ———: ———. In an action for personal injuries, where there was evidence tending to support the theory that a swelling resulted from an edematous condition and likewise testimony that it resulted from a trauma, testimony by plaintiff's physician, after he had stated that he was able to determine by looking at the swelling whether it was traumatic or edematous in character, that the swelling was caused by a trauma was not objectionable as calling for a matter within the province of a jury.

5. ———: ———: ———. An attending physician, who has examined a wound, may express an opinion whether or not it resulted from a burn or the cut of a knife.

6. ———: **Opinion Evidence: Cause and Effect.** A mother, who has raised several children and has had experience with burns, may express an opinion that a scar appears to have been caused by a burn.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Geo. T. Priest* and *R. E. Blodgett* for appellant; *Boyle & Priest* of counsel.

(1)  Plaintiff's instruction No. 4, which directed the jury to return a verdict for the plaintiff if they believe the car was "started forward with a sudden and an unusual jerk" while plaintiff was alighting therefrom is erroneous, because it does not require the jury to find further that the car was not stopped a sufficient length of time to permit plaintiff to alight. Millar v. Transit Co., 215 Mo. 607, 619; Cramer v. Traction Co., 112 Mo. App. 350, 363; Clotworthy v. Railroad, 80 Mo. 220; Jackson v. Railroad, 118 Mo. 199, 224.  (2) The court erred in permitting plaintiff's expert witnesses to testify as to their conclusions and thereby invade the province of the jury. (a) The court erred in permitting witness, Dr. Simon, and witness Dr. Konzelmann, to testify plaintiff will suffer pain in the future. Glasgow v. Railroad, 191 Mo. 347, 360; Beahr v. Casualty and Surety Co., 133 Mo. App. 542; Thomas v. Metropolitan Street Ry. Co., 125 Mo. App. 131, 138; Lutz v. Metropolitan Street Ry. Co., 123 Mo. App. 499, 502; Feed and Coal Co. v. Railroad, 129 Mo. App. 498, 504.  (b) The court erred in permitting Dr. Konzelmann to testify that plaintiff's swelling was caused by trauma, that is to say, violence. Same cases as cited under (a).

*George Safford* for respondent.

(1)  The high degree of care which the law puts upon the carrier of passengers is not fulfilled in the case of a street railway carrier, unless its servants, before putting a car in motion, see and know that all pas-

sengers in the act of alighting have succeeded in doing so in safety, and that no passenger is in such a situation as to be put in peril by the starting of the car. 3 Thompson on Neg. (2 Ed.), sec. 3520, p. 894; West Chicago, etc., Co. v. Manning, 170 Ill. 417; Railroad v. Wildman, 119 Ala. 547; Anderson v. Citizen's St. R. Co., 12 Ind. App. 194; Leavenworth Elec. Ry. v. Cusick, 60 Kan. 590; Hurley v. Railroad, 120 Mo. App. 265; Murphy v. Railroad, 125 Mo. App. 275; Bell v. Railroad, 125 Mo. App. 665. (2) The court did not err in permitting plaintiff's expert witnesses to testify to their alleged conclusions. (a) Because the witnesses testified to opinions, not conclusions. (b) Because, whether or not certain injuries, seen by the expert witness, will cause pain in the future, is a proper subject for expert testimony. Rossier v. Railroad, 125 Mo. App. 163; Detrich v. Railroad, 125 Mo. App. 611; Redmon v. Railroad, 185 Mo. 14; Wood v. Railroad, 181 Mo. 448; McCaffrey v. Railroad, 192 Mo. 160.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

It appears plaintiff, a lady about sixty years of age, was a passenger on defendant's street car operated by it on Olive street in the city of St. Louis. She was seated in the forward portion of the car. Upon approaching Theresa avenue, which was her destination, she gave the signal for the car to stop to permit her to alight. In pursuance of the signal, the car came to a stop at the usual place for discharging and receiving passengers and because of its crowded condition, plaintiff passed out of the front door to alight from the platform there provided for such purpose. The evidence tends to prove that she proceeded with reasonable diligence and exercised ordinary care for her own safety, but while she was in the very act of alighting, the power

was turned on and the car started forward. It is said the conductor, who was on the rear platform, sounded the bell for the motorman to move forward, which signal was complied with, and the car started in motion while plaintiff was about to alight. Because of this fact, she was precipitated upon the ground with great force and received numerous, painful and permanent injuries.

Among other things, the court instructed the jury for plaintiff that if she was a passenger on the car and it stopped at Theresa avenue for the purpose of permitting her to alight therefrom and that she proceeded to alight from the car with reasonable expedition and the servants and agents of defendant, whose duty it was to control the motion of the car, while she was in the act of so doing and before she had fully alighted therefrom, without giving her warning to that effect, caused the car to start forward with a sudden jerk and thereby directly and proximately caused her injury, then the finding should be for plaintiff, provided she was exercising ordinary care at the time. It is argued the instruction is erroneous in that it omits to require the jury to find further that the car was not stopped a reasonable length of time to permit plaintiff to alight. The argument is without merit on the facts of the case, for though it is true the duty rests upon defendant to stop its car a reasonable length of time for passengers to alight and the passengers are presumed to act with due diligence in that regard, the doctrine is without influence here for it appears the car stopped upon the plaintiff's signal for the purpose of permitting her to alight. In such circumstances, the high degree of care which the law devolves upon the carrier of passengers is not fulfilled unless its servants, before staring the car, see and know that the passenger in the act of alighting has succeeded in doing so in safety and that he or she is not in such a situation as to be imperiled by the sudden starting of the car. [Thompson's Com. on Neg., sec. 3520; Nelson v. Met.

St. R. Co., 113 Mo. App. 702, 88 S. W. 1119; Bell v. Central, etc., R. Co., 125 Mo. App. 660, 103 S. W. 144; Murphy v. Met. St. R. Co., 125 Mo. App. 269, 102 S. W. 64; Hurley v. Met. St. R. Co., 120 Mo. App. 262, 96 S. W. 714.] Both the conductor and motorman must have known in this case that plaintiff was then in the very act of alighting from the car, for it is conclusively shown that the car stopped to permit her to do so. And it appears she was under the very eye of the motorman, who was stationed on the front platform, when the car was suddenly started forward by him. In such circumstances, those operating the car should not only hold it stationary a reasonable length of time for the passenger to alight but should exercise high care as well to the end of ascertaining the fact of the passenger's safety before putting the car in motion, to her peril. [See Bell v. Central, etc., R. Co., 125 Mo. App. 660, 103 S. W. 144 and authorities supra.]

Two physicians, Dr. Simon and Dr. Konzelmann, who had made personal examinations with respect to plaintiff's injuries, qualified as expert witnesses at the trial. After describing plaintiff's condition, etc., each of these professional gentlemen was permitted to express an expert opinion, based solely upon the objective symptoms which he discovered from an examination of plaintiff's injuries, to the effect that she would suffer pain therefrom in the future. From examination made and the objective symptoms discovered, these witnesses said they were able to state whether or not she would suffer pain therefrom in the future. After so stating, the court permitted them to express the opinion, over defendant's objection and exception, that plaintiff would suffer future pain from the injuries said to have been received through defendant's negligence. It is earnestly argued the court erred in so doing, for the reason the expert opinion so given was but the conclusion of the witnesses and invaded the province of the jury. No one can doubt that a physician duly qualified as an ex-

pert may, as a general rule, testify to the probable results of an injury. [Rogers on Expert Testimony (2 Ed.), sec. 50, p. 122; Louisville, etc., Ry. Co. v. Lucas, 119 Ind. 583, 584; McClain v. Brooklyn, etc., Ry. Co., 116 N. Y. 459; Lincoln v. Saratoga, etc., R. Co., 23 Wend. (N. Y.) 425; Abbot v. Dwinnell, 74 Wis. 514; Rossier v. Met. St. R. Co., 125 Mo. App. 159, 164, 101 S. W. 1111.] We entertain no doubt whatever that it was competent for the physicians to express the opinion that plaintiff would suffer pain in the future from her injuries. This in no respect invaded the province of the jury for it was a matter about which laymen are not competent to exercise an intelligent judgment, in the absence of enlightenment from those who are peculiarly learned with respect to injuries and the probable results which they will entail.

It appears, among other injuries, plaintiff received a severe sprain of the ankle and her foot was much swollen thereafter. Dr. Konzelmann, though he qualified as an expert as well, was her attending physician, having been called immediately after plaintiff was injured. This witness gave testimony with respect to the swollen condition of plaintiff's foot and was permitted to testify, over defendant's objection and exception, that the swollen condition of the foot was traumatic; that is to say, that it resulted from violence. The purpose of this opinion evidence was to exclude the idea that such swelling was edematous, for the theory of defendant as to the swelling is, that plaintiff was dropsical, and there is evidence tending to support it. In other words, there is evidence in the record tending to support the theory that a considerable part of the apparent swelling resulted from a dropsical or edematous condition independent of the injury. In view of this, it is argued the court erred in permitting Dr. Konzelmann to state his opinion to the effect that plaintiff's swollen foot was traumatic and resulted from violence, for it is said such was the very issue before the jury and his evidence.

touching that particular matter is but a conclusion and therefore incompetent. To a complete understanding of the question presented, we copy from the record the distinction between an edematous and traumatic condition, which was related on the trial as follows:

"An edema, as we speak of edema, is a condition where a watery fluid deposits itself beneath the skin, causing it to become big and puffy also; it is a swelling, of course, but it is quite different from a swelling that is traumatic, like from a blow. If you put your finger on it and press, it would leave a pit and it is quite easy for the physician to distinguish the edema. The swelling has very different symptoms from that caused by a blow or injuries where the swelling is the direct result of the blow, with the blood congestions and deposits."

Dr. Konzelmann, who was plaintiff's attending physician, stated that he was able to determine by looking at the swelling whether it was traumatic or edematous in character. After so stating, plaintiff's counsel propounded the following question to the witness:

"Q. I will ask you to state whether or not the swelling you noticed was caused by trauma, that is to say, violence?"

Over the objection and exception of defendant, the court permitted the witness to answer that the injury was traumatic. It is argued this was error, because it permitted the physician to answer the very question in issue before the jury. Upon mature consideration of the matter, we are persuaded the argument is unsound for the reason the doctor's statement did not purport to say that the swollen condition resulted from the street car injury but only went to the nature of the injury as descriptive thereof in a general sense. The case of Glasgow v. Met. St. R. Co., 191 Mo. 347, 358 et seq., 89 S. W. 915, relied upon by defendant, is not precisely in point, and we believe the rule of that case should not be extended. In the case referred to, the injury

involved occurred as a result of an alleged fall from a street car. The fact that plaintiff fell from the car at all, however, was denied and therefore was an issue throughout the case. One expert witness in that case was permitted to answer that in his opinion it was a severe fall that caused plaintiff's injury. Another expert was permitted to state in substance that in his opinion plaintiff's injury was the result of, or was caused by, the alleged fall. These questions and answers were condemned because they went beyond the realm of expert testimony and invaded the province of the jury through the witness expressing a conclusion as to how the injury was caused. It is said in the opinion that it would be entirely proper had the experts said the injury might have resulted from a fall or it might have resulted from another cause as it appeared in the case the present condition was within the range of probability traceable to a cause other than the fall. "But," said the court, "the testimony of these expert witnesses went to establish the fact of the alleged fall which was not a fact they learned from the medical books. Thus the weight of their testimony went into the scales on the question of whether or not there was an accident." [Glasgow v. R. Co., 191 Mo. 347, 361, 89 S. W. 915; see also to the same effect Smart v. Kansas City, 208 Mo. 162, 163, 105 S. W. 709; Lawson's Expert Ev. (2d Ed.), 173; see also Rogers' Expert Testimony (2 Ed.), 129.] That what caused an injury is a question for the jury, generally speaking, is undoubted, and it is certain in a case where the fact that plaintiff was injured at all through the fault of defendant is wholly denied, such opinion evidence as that above discussed should be condemned.

But the question and answer under consideration here are of a different class entirely, for instead of going to the effect that the swollen condition of plaintiff's foot appeared to be the result of a fall from a street car,

155 App.—14

the question required, and the witness answered, only
that the swelling was traumatic. In other words it ap-
peared to be the result of violence of some character as
distinguished from a dropsical condition. It is always
competent for the attending physician to state the na-
ture and character of the injury and no more than that
was done here. No one can doubt that an attending
physician who has examined the hurt may express an
opinion as to whether or not it resulted from a burn or
the cut of a knife. Indeed, if the physician did not
know so much as a fact acquired through impressions
made on his mind, aided by professional learning at the
time he examined and treated the plaintiff, then he was
hardly able to prescribe for the patient in the first in-
stance. Such testimony almost, if not quite, savors of
fact and not of opinion in the full sense of that term.
Even a non-expert, a mother, who has raised several
children and had experience with burns, may express
her opinion that a scar appears to be caused by a
burn. [State v. Nieuhaus, 217 Mo. 332, 117 S. W. 73;
see also Rogers' Expert Testimony (2 Ed.), 127.] But
it is suggested the difference between a burn or a cut
with a sharp instrument such as a knife is obviously
distinguishable by persons possessing no scientific
knowledge on the subject and therefore the illustration
is not valid. Though the difference between a burn and
a cut may be obvious to a non-expert, it is certainly no
more so than that between a traumatic and edematous
swelling to one learned in the sciences of medicine and
surgery and such a witness violates no intelligent rule
of procedure by merely stating that the injury treated
by him appeared to be traumatic or occasioned by
violence. [Robinson v. St. Louis & S. R. Co., 103 Mo.
App. 110, 77 S. W. 493; Torreyson v. United Rys. Co.,
144 Mo. App. 626, 636, 129 S. W. 409.] Had the
witness stated that the injury appeared to result from
being suddenly thrown from a street car with great
force, it would fall within the rule of the Glasgow

case but, as it is, only the nature and character of the swelling were described without suggesting the particular cause.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.