MAYOR

v.

ST. LOUIS PUBLIC SERVICE CO.

No. 43637.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied June 14, 1954.

Miller & Landau, St. Louis, for appellant.

Lloyd E. Boas, St. Louis, for respondent.

CONKLING, Judge.

William Mayor, hereinafter called plaintiff, appealed from a judgment entered after the trial court had sustained the motion for new trial filed by St. Louis Public Service Company, hereinafter called defendant. In his action for damages for personal injuries the jury had returned a verdict for $25,000 for plaintiff. Plaintiff filed a motion for new trial on the issue of damages only. Defendant filed a motion for new trial of all the issues in the case. The trial court overruled plaintiff's motion for new trial, but sustained defendant's motion for new trial on the grounds that instruction No. 1, which directed a verdict for plaintiff, improperly declared the law, was prejudicial and misleading, was unsupported by the evidence, and omitted essential elements of plaintiff's case.

About 8:30 p. m. on November 8, 1950, plaintiff, who was twenty-four years of age at trial time, was a passenger on defendant's northbound Taylor Avenue bus and alighted therefrom at or near the southeast corner of Euclid and Delmar Avenues in St. Louis. Plaintiff was crippled and had to use two crutches to walk. He alighted from the front door of the bus using his crutches. He claims that after he had alighted and before he had a reasonable opportunity to reach a place of safety the bus was started up and was turned toward him striking his left crutch, throwing him off balance to the street and under a portion of the bus so that the right rear wheel thereof passed over his limbs and injured him.

It was alleged in the petition that (1) defendant started the bus forward before plaintiff had been allowed a reasonable opportunity to alight and reach a place of safety, (2) defendant caused the bus to turn and be operated so as to strike plaintiff's crutch, throw him off balance and under the bus, (3) defendant failed to warn plaintiff of its intention to start the bus forward before he had been allowed a reasonable opportunity to alight and reach a place of safety, (4) defendant knew or should have known that to start the bus forward before plaintiff had a reasonable opportunity to reach a place of safety was

likely to cause the bus to strike plaintiff, and (5) that defendant saw or by the proper care should have seen plaintiff in imminent peril and danger of being struck in time thereafter to have refrained from starting the bus, or to have stopped the bus or to have swerved it in such manner as to have avoided striking plaintiff.

The testimony adduced tended to establish that plaintiff was a passenger on defendant's Taylor Avenue bus and sat in the seat on the left side thereof directly behind the bus driver and faced the opposite side of the bus; that the bus moved north on Euclid to Delmar, and that at Delmar the bus makes a right turn into Delmar to go east; that the bus stopped near the southeast corner of Euclid and Delmar three or four feet out from the east curb of Euclid (which the bus driver testified was necessary in order to there make the right turn into Delmar); that when the bus stopped at Euclid and Delmar three passengers alighted from the bus at the front door and then plaintiff alighted last at the front door; and that it was then raining.

Plaintiff testified that when he then started to get down off the bus: " * * * I necessarily put both my crutches under one arm, so that I will have one hand free to grab a railing there, in order to support myself, as I am getting off, and I put the crutches under my right arm, and I had my left arm free to grab the railing, so that when, so I could get off, and I got down off the bus, all right, on to the street, and I had to get off in a sort of sideways, and after I had gotten down, I had to take one crutch, and get myself turned around and put the crutch under my left arm. Then after that, I have to get myself set to go, to move forward, to the curbing, and I take, I believe, I took about one or two steps, from the bus, after I had gotten on to the street, and when it stopped, the bus was approximately, oh, three or three and a half feet from the curb. In other words, I had to step from the bus into the street, not onto the curb, but into the street," that when plaintiff had stepped down off the bus, and had gotten the crutches under each of his arms, he was then facing northeast and his left crutch was about 18 inches from the side of the bus; that "after I had gotten set, I heard the bus accelerate, you know, to start up, and I taken this step, as I say, and before I could get to the curbing, he (the bus driver) starts to make his turn; he makes the turn there at the corner to go into Delmar, and next thing I knew, my— this—some portion between the front and the rear door (of the bus) had struck my left crutch and thrown me forward, see, on my—and I felt myself instinctively trying to break my falls with my hands as I went down, and then, the bus went over my legs." At the time the bus struck his crutch plaintiff had not reached the east curb but "was barely prepared to put a crutch on the curbing." There was nothing to obstruct the view of plaintiff by the bus operator. Plaintiff had no warning that the "bus was going to start up." The bus was started up and was turned toward plaintiff and to the right to go east into Delmar Avenue. Other facts necessary to the disposition of the appeal will be later noticed.

In justification and support of the action of the trial court in granting the new trial because of the giving of instruction No. 1, defendant here first contends that the instruction contained abstract statements of law not applicable to the issues submitted, and that it assumed disputed essential facts. We consider those contentions in that order. It is first urged upon us that the instruction contained an abstract statement of law in that the jury was therein told that defendant had the duty of using "the highest degree of care and vigilance to safely transport passengers," and that such duty "continues, not only during actual transportation but while the passenger is alighting." Defendant asserts that plaintiff's theory was that he had safely alighted before his injury occurred. But that was not the whole of plaintiff's theory.

The above quoted and objected to part of the instruction is but a small and isolated portion of the entire instruction which defendant takes out of context to urge its abstractness. For defendant to merely refrain from starting the bus while plaintiff was alighting therefrom is neither the

whole of defendant's duty, the whole of the facts before us nor the whole of the instruction. The instruction further instructed the jury, in the same sentence thereof, that if the jury found that plaintiff was a passenger on the bus (which fact is admitted) that plaintiff continued in such passenger status and was entitled to the highest degree of care while alighting at his destination, "and until he had reasonable time to reach a place of safety." That portion of the instruction which defendant above contends is abstract is but preliminary in nature, it correctly stated the applicable law, and in the same sentence is unequivocally and logically tied into plaintiff's theory of the case and the ultimate issue involved, all of which the evidence supports and the instruction thereafter submits to the jury.

■ The Missouri cases warrant the statement that while a passenger should, of course, alight and move to a position of safety with such reasonable diligence as his personal situation permits, yet the exercise of the highest degree of care by the carrier requires further that sufficient time be allowed before starting up so that the alighting passenger shall have an opportunity, which is reasonable under existing circumstances, to reach a place of safety so that he will not be imperiled by the carrier's movement of the bus; that before starting the bus the carrier should see and know that the alighting passenger has not only alighted safely, but that he is not in such position or situation as to be imperiled by the starting up of the bus; and that if the position of an alighting passenger upon the street be such that the movement of the bus might imperil or endanger him, the carrier is charged by law with knowledge of such fact. Girratono v. Kansas City Public Service Co., Mo.App., 243 S.W.2d 539, and cases there cited, Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W. 2d 59; Gurley v. St. Louis Public Service Co., Mo.Sup., 256 S.W.2d 755; Paul v. Metropolitan Street Railway Co., Mo.App., 179 S.W. 787; Nelson v. Metropolitan Street Railway Co., 113 Mo.App. 702, 88 S.W. 1119; Jerome v. United Railways

Company of St. Louis, 155 Mo.App. 202, 134 S.W. 107; Gott v. Kansas City Railways Co., Mo.Sup., 222 S.W. 827. And see also, 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2142, p. 19, and § 2172, p. 147, and German v. Muskingum Valley Transit Co., Ohio Com.Pl., 94 N.E.2d 52; Texas, N. M. & Okl. Coaches, Inc., v. Williams, Tex.Civ.App., 191 S.W.2d 66; Houston Transit Co. v. Zimmerman, Tex.Civ.App., 200 S.W.2d 848.

■ Defendant urges that by the use of the word "vigilance" in the phrase "the highest degree of care and vigilance," the instruction imposed upon defendant a greater burden than the law requires. Defendant cites State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S.W. 929. In that case this court was considering the Vigilant Watch Ordinance of the City of St. Louis wherein was set out the duty of street railways in that city toward vehicles and pedestrians on the city streets. Even in such a case it was held that as there used "vigilant" meant a watchful and attentive watch, attentive to discover and avoid danger. The use of the word "vigilance" in instruction 1 did not enlarge defendant's instant duty to exercise the highest degree of care. Hale v. St. Louis Public Service Co., Mo. App., 238 S.W.2d 876.

■ In this case the plaintiff, a cripple who could walk at all only by the use of two crutches, alighted at night and in the rain from the front end of this bus, within the plain view of the bus operator, and at a place where the latter knew that he intended to turn the bus to the right and toward plaintiff when he started the bus forward. Under these circumstances the law required of the bus driver an attentive watch to discover and avoid danger to plaintiff, and further required that the bus be not moved toward plaintiff until a reasonable opportunity was afforded him to reach a place of safety. The exercise of the highest degree of care by a bus carrier requires that a reasonable opportunity to reach a place of safety to avoid being imperiled by the starting of a bus be given to the alighting

aged, and infirm, and crippled, and lame, and halt and blind, and to children of tender years, as well as to the alighting youth, and to the agile, and to the alert. The care which must be thus exercised toward an alighting passenger must be proportionate to the degree of danger inherent in the particular passenger's personal situation and to his obvious needs.

The courts have many times said that instructions stating mere abstract principles of law should not be given since they tend to confuse and mislead the jury. But that rule is uniformly modified by the further rule that where, as here, the principle stated is therein connected with the issues involved the instruction is not erroneous. We have examined the cases cited by defendant. Those cases are not instantly determinative. Instruction 1 correctly stated the degree of care due plaintiff while a passenger and alighting and until he was thereafter in a place of safety. The objected to portion tied in the vital submitted issue of the case. We rule that under these circumstances it did not violate the rule against giving purely abstract instructions. The above contention is therefore denied.

It is next contended by defendant that instruction 1 assumes that after plaintiff alighted from the bus he "was walking with the aid of his crutches toward the east curb, but had not reached the curb." It is asserted that because the bus operator testified that plaintiff walked to the curb, then stepped up onto the sidewalk and was walking across the sidewalk toward the store on the corner, that the instruction assumes a controverted issue of fact. The fatal weakness of defendant's above contention is that the instruction clearly does not make the above assumption. In submitting the matter the instruction required the jury to find as a fact from the evidence that after plaintiff had alighted from the bus and when the bus struck his crutch, he "was walking with the aid of his crutches toward the east curb, but had not reached the east curb." The submission of such fact finding to the jury was authorized by the above quoted testimony. This contention is denied.

It is also contended by defendant that the instruction assumes that when the bus started up "plaintiff had not reached a place of safety, but was in a position of peril and danger." It is sufficient answer to such contention to state that the opening words of the last paragraph of the instruction require the jury to find such to be the fact. This contention must be denied.

It is next contended by defendant that the instruction assumes that defendant started the bus "before plaintiff had a reasonable opportunity to reach a place of safety," and that it thus assumes that defendant did not afford plaintiff a reasonable opportunity to reach a place of safety. With that contention we cannot agree. The last paragraph of the instruction required the jury to find, as facts: (1) that when the bus was started forward and east, plaintiff had not reached a place of safety, but was in a position of peril and danger, (2) that defendant failed to use the highest degree of care and that defendant was negligent in starting the bus before plaintiff had a reasonable opportunity to reach a place of safety, and (3) that such negligence, if the jury found such negligence, caused plaintiff to be injured.

We have examined all the cases cited in the briefs. Defendant relies strongly upon the two opinions in the Girratono case, supra, as supporting its position that the instruction assumed controverted facts. In that case the carrier defendant had discharged a passenger immediately next to a high snow bank and at a place which prevented him from getting over to the curb. The evidence there established that the bus was then started up and that the casualty was caused because the bus skidded into plaintiff. The bus would not have struck plaintiff had it not skidded. The instruction in the Girratono case did assume plaintiff was not in a position of safety, but the instant instruction did not make any such assumption. In this case the jury was required to find that as a fact. The Girratono case is not authoritative here upon the point urged as to any infirmity in the instant instruction.

Consideration of the entire instruction and a careful analysis of all of the facts and issues submitted therein convinces us that instruction 1 clearly and distinctly submits the ultimate issuable facts requisite to liability. The question of whether plaintiff had a reasonable opportunity to reach a place of safety before the bus started up and was turned toward the east was here fairly submitted to the jury. By their verdict the jury answered that question in the negative. We rule that instruction 1 properly declared the law of the case, that it was supported by the evidence, that it omitted no essential elements of plaintiff's case and assumed no controverted facts and that it was not prejudicial and could not have misled the jury. We therefore rule that the trial court did not err in giving instruction 1 to the jury.

There is only one other question presented to us by this appeal. It is contended by defendant that the trial court properly sustained defendant's motion for new trial because the verdict and judgment of $25,000 is so grossly excessive that it indicates passion and prejudice on the part of the jury. The trial court sustained defendant's above motion and granted a new trial upon the sole ground that the court had erred in giving instruction 1. However, in the trial court's memorandum filed with its order sustaining defendant's motion for new trial, the able and learned trial judge while conceding that the injuries which plaintiff sustained were substantial expresses also the belief and opinion that the verdict of the jury was excessive by $8,000. This matter was not mentioned in the court's order and is not for consideration here.

We now examine respondent's contention that the new trial was properly granted because the verdict was excessive. The testimony before us shows plaintiff had sustained a brain injury at birth which caused a spastic paraplegia; that as a result of that condition plaintiff's muscles became spastic and the flexor muscles of his body became stronger than the extensor muscles; that persons with that condition tend to have deformities; that plaintiff had a "certain head motion," and a strabismus; that

plaintiff had been under almost continuous medical care since infancy, having had early treatment in Shriners Hospital for Crippled Children in St. Louis; that plaintiff was unable to walk at all until, when seven years of age, he had made sufficient progress that he became able to then walk with braces and crutches; that at thirteen years of age plaintiff underwent two extensive surgical operations at St. Luke's Hospital in Kansas City on both the bones and soft tissues in each leg; that plaintiff's condition thereafter steadily improved, but he used crutches to walk thereafter and was able to discontinue the use of braces; that before the instant accident plaintiff was able to get about on transportation vehicles, "I did that with considerable ease, on and off the street car and buses, and just—I go most any place" without assistance, but upon his crutches; that he had finished two years of high school work, and had sold papers and was also gainfully employed "on the road with a magazine crew," and did door-to-door soliciting and selling eight hours a day; that before November 8, 1950, plaintiff had progressed to where he could walk without crutches as far as one and a half times across the courtroom in which the case was tried; and that, with crutches, but otherwise unassisted, plaintiff could travel alone anywhere.

It further appears from the testimony that after the accident of November 8, 1950, plaintiff was taken to the City Hospital; that his legs and knees were then badly injured and bleeding; that he was there surgically operated and casts were placed on his legs from his ankles to his groin; that he remained in the hospital about three and one-half months and thereafter returned for monthly check-ups; that he rented and at home he used a "walker" device for a while, but thereafter used crutches with difficulty, and lacked stability; that since the accident he has constant pain in his knees, legs and ankles which is more pronounced when he attempts to put weight on his feet; that since the accident he usually has someone accompany him when he goes out and if he goes any dis-

tance usually goes in a cab; and that before the accident he could stand alone unaided, but since the accident cannot stand and has no balance and no support in his left leg.

It also appears that as a result of the accident on November 8, 1950, plaintiff sustained a comminuted fracture of the right tibia extending into the right knee joint with separation of the fragments; that two wire nails were placed in the fracture of the lower portion of the left femur; that there is a marked atrophy of plaintiff's legs, and an abnormal lateral motion of and instability of the left knee joint which will not improve but might get worse and was due to a soft tissue injury of the ligaments; that the knee joints have a preternatural movement; that his knees were badly bruised and the superpatellar pouch was severely distended on both sides; that the left knee was greatly swollen and blood had to be aspirated out of the knee joint; that two threaded Kerschner wires were inserted across the fracture of the left condyle; and that a segment of the condyle of the right knee was separated from the main portion of the bone.

This case is unusual, and this phase of it has presented many difficulties. The transcript reveals that when injured on November 8, 1950, many of plaintiff's twenty-two years had been spent in seeking to attain a mobility somewhat approaching the normal for one even so greatly handicapped from birth. He had struggled through school until he had finished two years of high school. He had had some gainful employment selling papers and had worked eight hours a day with a traveling magazine crew, but was unemployed at the time of the accident. He had made progress until he could walk a short distance without crutches, and could go about and had some mobility by the aid of his crutches. He had in some degree attained a useful place in society, but it does not appear that he was wholly self supporting, even when employed. The further progress he might have made toward normal mobility, had not the instant occurrence intervened, does not appear in the transcript, and is but speculative. In any event, the progress he had theretofore made was purchased at a high price through long years of physical handicap.

It clearly appears that the instant injury wiped out the progress he had theretofore made and his lower left leg now dangles limply and swings about from the knee. The evidence before us is that that knee and leg condition will never improve but might become even worse than at trial time. Plaintiff now has no hope that he can ever walk without crutches. True it is that he used crutches before the accident, but he had also made enough progress with his prior condition that he could walk short distances without crutches. Plaintiff was deprived of such capacity of locomotion as he had before the accident. He is also deprived of all possibility of ever having the power of locomotion without crutches. Before the accident he suffered no pain, but since then his pain has been constant and acute and will continue. His hospital bill was $1410.07. He suffered crushing injuries to both legs. From the testimony the jury could reasonably have inferred that plaintiff sustained a substantial impairment of such earning capacity as he theretofore had. It appears plaintiff could not now work at any employment requiring any personal mobility.

Many cases upon the question of the claimed excessiveness of the verdict are cited in the briefs. We have examined them but the facts of those cases clearly and instantly distinguish them from the most unusual facts of this case.

In the consideration of asserted instances of excessive verdicts, and in our efforts to maintain so nearly as may be done a uniformity as to personal injury judgments, we must meet the test and in the final analysis determine the question of whether the amount of damages awarded is such as to shock the conscience of the court, or whether that amount is within the bounds of reason. After giving proper weight and consideration to all the factors we must consider in determining this question we have concluded that under the in-

stant circumstances the verdict of the jury is within the bounds of reason. The assignment that the verdict of the jury of $25,000 is excessive is therefore overruled.

Concluding that the court did not err in giving instruction 1, and that the verdict was not excessive, the cause must be remanded to the circuit court with directions to that court to reinstate the jury's verdict and the judgment which was entered in accordance therewith. It is so ordered.

All concur.

## On Motion for Rehearing

PER CURIAM.

Defendant's motion for rehearing complains that instruction 1 erroneously failed to require a finding by the jury that by the exercise of the highest degree of care the bus operator could have seen and known that plaintiff was in a position of danger. Such complaint was not made in defendant's "Points and Authorities" but was stated only by way of argument in the argument portion of defendant's brief. However, we will consider it.

The bus operator, called as a witness by defendant, testified that the bus was forty feet long and that he stopped the bus headed north about three feet out from the right curb with the front door of the bus about eight feet south of the south curb of Delmar; that when the bus was turned from that stop to the right into Delmar it was necessary to avoid the traffic moving west on Delmar, and the turn to the right into Delmar was and had to be a short turn; that to make the short sharp turn to the right into Delmar it was necesary to stop some little distance out from the right curb; that the sharper the turn which is made from that position, the closer the side of the bus will move in toward the right curb; that it was then raining; that plaintiff was a passenger on his bus on the occasion mentioned in the evidence and after the bus stopped there plaintiff, on crutches, alighted from the front door of the bus; that he saw plaintiff after the latter had alighted from the bus; that he started the bus up and turned it sharply to the right into Delmar Avenue.

It clearly appears from the above that it is conceded by defendant that the bus driver in fact actually did see and know that unless a reasonable opportunity was afforded plaintiff to move to a place of safety after alighting, that plaintiff was in a position of danger from the starting of the bus; and that the bus driver knew (as he must have known) that to start the bus forward and to the right before plaintiff had a reasonable opportunity to reach a place of safety, would subject plaintiff to the imminent danger of being struck by the turning bus. The exercise of the highest degree of care toward plaintiff, under those circumstances, of necessity had to be proportionate to the danger inherent in plaintiff's personal situation and to his obvious needs, all of which the bus driver could and did see. Under the evidence and the law the jury had a right to find that the bus driver, having seen plaintiff alight at that place under those circumstances, failed to attentively watch and afford plaintiff a reasonable opportunity to reach a place of safety.

Instruction 7, given at defendant's request, directed the jury to return a verdict for defendant *unless* plaintiff had proved that the bus operator knew, or by the exercise of the highest degree of care could have known, that plaintiff was not in a position of safety. Instruction 7 covered the matter of which complaint is now made. All the instructions must be read and considered as a whole. The complaint is wholly without merit.

Other matters mentioned in defendant's motion for rehearing are fully covered by the opinion heretofore filed.

The motion for rehearing is overruled.