(No. 4068—

HENRY C. MOORE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 9, 1951.*
*Petition of Respondent for rehearing denied April 10, 1951.*
*Petition of Respondent to reconsider its petition for rehearing denied July 8, 1952.*

JOHN R. SNIVELY, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; JAMES C. MURRAY, A. ZOLA GROVES, WILLIAM J. COLOHAN, WILLIAM H. SUMPTER, AND ROBERT J. BURDETT, Assistant Attorneys General, for Respondent.

LANSDEN, J.

Claimant, Henry C. Moore, seeks to recover from respondent for its negligence, while claimant was a convict at the so-called "Old Prison" of the Illinois State Penitentiary, Joliet, Illinois.

On October 6, 1945, claimant began to serve a sentence for larceny at such penitentiary. His cause of action arose on January 30, 1946. On October 2, 1946, claimant was transferred from the Old Prison to the Stateville Branch, and on October 30, 1946, he was released on parole. On March 13, 1947, he was returned to said place of confinement under a new sentence, and also as a parole violator.

Claimant filed his case on January 27, 1948, while confined in the penitentiary, and the hearing of the case was held at the penitentiary.

We have previously held that a convict can maintain an action in this Court, and that a conviction for a felony does not bar a convict from prosecuting a claim before this Court, while in such status.

In *McElyea* vs. *State*, 7 C.C.R. 69, we said:

"The law of this State gives unto a prisoner serving a sentence in any penal institution the right to sue or be sued in the Courts of this State during the period

of such confinement. A convict does not lose his personal rights because of his imprisonment although he is deprived by law of certain rights of citizenship. Therefore, as he possessed said personal rights the claimant was entitled, able and free to exercise them, even though he was confined in the penitentiary."

In *Robertson* vs. *State*, No. 4211, opinion filed February 14, 1950, we followed the *McElyea* case.

Claimant can, therefore, maintain his action. See also *Gordon* vs. *Garrson*, 77 F. Supp. 477.

Prior to the 1945 Court of Claims Act, no convict could recover for negligence from respondent, because it was held that the operation of penal institutions was a governmental function, and, therefore, the doctrine of *respondeat superior* could not be applied. *Monohan* vs. *State*, 10 C.C.R. 10; *Hewlett* vs. *State*, 13 C.C.R. 27.

However, Section 8 C of the 1945 and present Court of Claims Act reads as follows:

"All claims against the State for damages in cases sounding in tort, in respect of which claims the claimants would be entitled to redress against the State of Illinois, at law or in chancery, if the State were suable, and all claims sounding in tort against The Board of Trustees of the University of Illinois; provided, that an award for damages in a case sounding in tort shall not exceed the sum of $2,500.00 to or for the benefit of any claimant. The defense that the State or The Board of Trustees of the University of Illinois is not liable for the negligence of its officers, agents, and employees in the course of their employment shall not be applicable to the hearing and determination of such claims."

We have held that such Section constitutes a complete waiver by the State of its immunity from liability in tort for the negligent exercise of a governmental function, and that the doctrine of *respondeat superior* can be applied against respondent in an action based on negligence. *Rickleman* vs. *State*, No. 4195, opinion filed October 20, 1949.

We shall hereinafter refer to said Section 8 C of the 1945 Court of Claims Act as it applies to another phase of the case, but, at this point in our opinion, we merely observe that said Section affords claimant an

opportunity to have his claim heard, and to obtain an award, if the facts of the negligence of respondent are established.

Claimant's amended complaint contained three counts. Respondent's answer thereto amounted to a general denial, and no affirmative defenses were set forth therein.

All of these counts seek substantial damages for personal injuries sustained by claimant, who, as an inmate performing duties in the general kitchen at the State Penitentiary at Joliet, sustained serious injuries by reason of his left hand being caught by the worms of a food grinding machine. Count I charged respondent with negligence in permitting grease, oil, soap, water and other slippery material to accumulate on the floor of the kitchen on which claimant slipped and lost his balance. Count II charged respondent with negligence in that (a) it assigned him to work under unsafe conditions, (b) failed to give claimant proper instruction in the use of the grinder, or warn him of the dangers thereof, (c) failed to provide adequate or proper safeguards for the grinder, (d) operated the grinder without adequate or proper safeguards, and (e) failed to furnish adequate help or assistance to operate the grinder. Count III charged respondent with violation of a rule adopted by the Industrial Commission pursuant to the Health and Safety Act, which provides that meat, fish and other food grinders shall be provided with a hopper of such size and arrangement that the operator's fingers cannot come into contact with the cutting or feeding knives or worm.

As to Count I, we shall not set forth the evidence in detail. There is some conflict therein, but, in our opinion, the greater preponderance of the evidence

discloses that the floor of the kitchen was comparatively dry, and that all reasonable steps had been taken to remove any slippery substances therefrom. Claimant cannot, therefore, prevail as to Count I of his complaint.

As to Counts II and III, about the only fact not in dispute is that a hopper was not attached to the food grinder at the time claimant's left hand was caught in the worm thereof, and so badly mangled that most of his first, second and fourth fingers, and all of his third finger had to be amputated. There were crushing injuries to the palm and tendons of claimant's hand, and one metacarpal bone was fractured.

On the day of the accident, claimant and others assigned to work in the kitchen reported for work after breakfast. First claimant with some other convicts scrubbed, mopped and dried the kitchen floor. Then claimant was directed by Officer R. L. Palmer, Assistant Steward of the institution, to break macaroni. Upon completion of this task, Officer Palmer directed claimant to prepare a relish of pickles and tomatoes, which required use of the electrically operated food grinder.

The knives and worm of the food grinder were kept under lock and key. Officer Palmer got them out, and assisted claimant in assembling the machine.

Once the grinder was assembled, claimant began dipping pickles, dill, tomatoes and liquid out of a can with his right hand, and poured them into the mouth of the grinder with his left hand. He used a wooden mall or chuck that fitted into the oval-shaped mouth of the grinder to tamp the unground food toward the worm to insure and accelerate the grinding process.

After processing some of the relish, which came out of the end of the grinder and dropped into a can, claimant slipped, or stumbled, and his left hand, which

was wet, slipped from the chuck, went down the mouth of the grinder, and there his fingers were caught by the worm, as a result of which he suffered the above described injuries.

The principal dispute in the record involves the availability of a hopper to be placed over the mouth of the grinder, so that an accident of this kind could absolutely be prevented from happening.

The evidence tends to show that a hopper was provided for the grinder, but the Departmental Report on file herein makes no mention of a hopper.

Officer Palmer testified that near the grinder there was a sign posted, which stated: "Do not put your hands in the grinder; always use the wood chucks." Claimant testified that the sign was not put up until after his accident happened. Whether the sign was posted before or after the accident is immaterial, since the wording thereof corroborates the conclusion, which we draw, that the use of the hopper was not insisted upon, or required.

Testimony in the record as to instructions given to claimant further substantiates the conclusion that the use of the chuck was mandatory, but the hopper not, and specific instructions were limited to the chuck in connection with its use with the grinder. The absolute safety afforded by the use of the hopper was not included in the instructions, and it is apparent that the failure of such instructions to include the mandatory use of the hopper was most significant in this case.

Count III is predicated solely on the violation of a rule of the Industrial Commission relating to hoppers for food grinders made pursuant to the Health and Safety Act. Ill. Rev. Stat., 1945, Chap. 48, Sec. 137.1,

et. seq. By Section 137.5 such rules have the force and effect of law.

However, the principal question is whether claimant, as a convict, is in a position to claim the benefits of such statute.

Section 137.2 makes said statute applicable "to all employees engaged in any occupation, business or enterprise in this State, and their employees" with certain exceptions not applicable herein.

Statutes similar to the Health and Safety Act have been on the statute books of this State for many years. Some, such as Laws 1909, page 202, antedated the Workmen's Compensation Act, and were statutory steps leading to the passage of the latter Act. These statutes were construed to apply to the ordinary relationship of employer and employee, and divested employers of the defenses of assumed risk and contributory negligence in actions brought by employees thereunder. *Streeter* vs. *Western Scraper Co.*, 254 Ill. 244.

With the passage of the Workmen's Compensation Act, certain employments became subject to that statute rather than the previous laws.

This Court has held that a convict is not an employee of the State within the meaning of the Workmen's Compensation Act. *Tiller* vs. *State*, 4 C.C.R. 243. Such holding is consistent with similar holdings from other jurisdictions. *Greenes Case*, 280 Mass. 506; *Lawson* vs. *Travelers' Ins. Co.*, 39 Ga. App. 85. The basis of such cases is that the employment relationship contemplated by the statutes is a voluntary one for wages, which relationship is terminable by either party. A convict cannot meet such a test.

We, therefore, conclude that claimant has no right of action under the Health and Safety Act, since he

cannot be considered as an employee within the contemplation thereof.

As to Count II, we have a different situation. Count II stated a cause of action for the specified acts of negligence. The failure of respondent to test the sufficiency of such allegations of negligence by a motion to dismiss, impliedly, if not expressly, concedes that, if proven, claimant should recover.

Claimant has, in, our opinion, proven that he was ordered and assigned to work under unsafe conditions, and that he was not instructed as to the proper use of the food grinder, and warned of the dangers thereof. Such omissions on the part of respondent amount to actionable negligence.

Although we have held that claimant cannot sue for a violation of the Health and Safety Act, the fact that respondent itself, acting through the Industrial Commission, has determined that food grinders not mandatorily equipped with hoppers are dangerous to those using them, is an express recognition by respondent that food grinders should be equipped with hoppers to be rendered safe.

We will not create an anomaly by holding that a food grinder without a hopper used by private persons is dangerous, while a similar unequipped grinder used by respondent is not dangerous. Respondent should in this case be held to the same standards, as it by law compels others to abide by.

Furthermore one of the cardinal tenets of the prison system in this State is that convicts should, if not incorrigible, be trained, so that upon release they can enter industry. Ill. Rev. Stat., 1945, Chap. 108, Secs. 10, 74, 76. Although the use of power driven machinery is held to a minimum in penitentiaries, Ill.

Rev. Stat., 1945, Chap. 108, Sec. 78, training in the use of approved safety devices would seem to be one phase of rehabilitating a convict to enter honest employment upon release from imprisonment.

Respondent, however, seeks to invoke the doctrine of assumed risk and contributory negligence against claimant. We do not feel that either defense is available in this case.

Claimant, as a convict, was required to take orders, and carry them out. To refuse to do so would subject him to disciplinary action, and the forfeiture of his limited privileges, including prompt consideration for parole. Thus, he did not occupy a position of independence, which a person outside a penitentiary occupies. His choice of action being limited, he, therefore, kept silent and did as he was ordered. In fact, he did not possess, under the circumstances in this case, the freedom of choice inherent in the doctrines of assumed risk and contributory negligence. We do not, however, hold that such doctrines can never be asserted against a convict, but merely conclude that they do not apply in this case.

The suggestion has been made that, if we grant an award in this case, other convicts will be encouraged to inflict injuries on themselves, and then sue the State for damages.

However, the New York Court of Claims has granted awards to convicts based on negligence of the agents and servants of that State, and an examination of the reported cases does not disclose any such disposition on the part of convicts since the initial award was made to a convict. *Robinson* vs. *State*, 273 N.Y.S. 465; *Bhullar* vs. *State*, 289 N.Y.S. 41; *Revelant* vs. *State*, 300 N.Y.S. 1186; *Scarnato* vs. *State*, 298 N.Y. 376.

Since this is a case of first impression in this State, we have carefully considered all questions raised, and discussed most of them. We conclude that claimant is entitled to an award.

As to damages, Section 8 C of the Court of Claims Act limits recovery in cases sounding in tort to $2,500.00.

Claimant's injuries were undoubtedly extremely painful. He was hospitalized for over a month. He has lost about 75% of the use of his left hand. In civilian life he was a truck driver, and earned $50.00 to $70.00 per week. We conclude that claimant is entitled to an award of $2,500.00, 46 A.L.R. 1230, 1294, 1304.

An award is, therefore, entered in favor of claimant, Henry C. Moore, in the sum of $2,500.00.