(No. 81-CC-0552—)

CLIFFORD A. BURNS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 21, 1982.*

CLIFFORD A. BURNS, *pro se,* for Claimant.

TYRONE C. FAHNER, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

Roe, C. J.

This is a tort action brought by Claimant, Clifford A. Burns, an inmate at Menard penitentiary, against the State of Illinois for personal injuries. The complaint states that Claimant was injured on April 2, 1980, while he was employed at his job at Menard penitentiary in the welding shop. As he was reaching for some gloves on a rack, a round piece of steel rolled off the rack and injured Claimant's left foot. Claimant charges Respondent with careless negligence and wilful and wanton acts in that he was not provided with safety shoes and was not provided with a safe place of employment. Claimant seeks damages from Respondent in the sum of ten thousand dollars ($10,000.00).

Claimant testified that his job at Menard was a welder. (Trans. 4.) Claimant testified that "someone just forgot to put the steel stops down inside this rack." (Trans. 6.) Claimant described the piece of steel that had struck his foot as weighing approximately 400 pounds. (Trans. 7.) Other inmates were responsible for placing the steel in the rack. (Trans. 8.) Claimant had not noticed the condition of the steel getting stacked too high. (Trans. 8.) There was nothing that would have prevented Claimant from noticing that the steel was stacked too high, but he "just didn't look." (Trans. 8.)

Claimant broke the big toe on his left foot and stated that the weather "bothers it just a little bit" and that sometimes "the toe gets numb." (Trans. 9.) Claimant does not limp or have discomfort in the toe as he walks. (Trans. 10.) Claimant stated there was nothing he could do physically before the accident that he couldn't do at the time of the hearing. (Trans. 10.)

Claimant testified that prior to this accident he had asked the people at the welding shop whether steel-toed shoes were furnished. (Trans. 12.) He asked for steel-toed shoes from the clothing house and was advised that he could not obtain them. (Trans. 12.)

Officer Bowen, in charge of security in the welding shop at the time Claimaint was injured, testified that he could not remember Claimant requesting steel-toed shoes. (Trans. 27.)

Officer Brown testified that he did not remember Claimant requesting a pair of steel-toed shoes and thought that he would remember something like that had it occurred. (Trans. 32.) Officer Brown testified that he could remember exactly the kind of shoes that Resident Burns wore while in the welding shop because he considered the tennis shoes worn by Claimant to be an unsafe practice. (Trans. 34.) Officer Brown testified that in addition to his job in overseeing the conduct of inmates so they didn't injure each other or obtain contraband, he was responsible to see to it that the employees or residents of the facility did not get injured or hurt. (Trans. 34-35.) When he observed the kind of shoes that the Claimant repeatedly wore to his job, he considered that to be unsafe. (Trans. 35.) On one occasion he asked the Claimant why he wore tennis shoes to work. He did not remember Claimant's response. (Trans. 35.) Brown testified that he had authority to a certain extent to direct inmates to do or refrain from doing certain actions which

were considered to be dangerous. (Trans. 35.) Officer Brown said he had a right to bring a halt to any condition which he thought would create a danger to inmates. (Trans. 35.) Officer Brown testified that he knew of no regulation regarding footwear and that the inmates could "wear anything on their feet they wanted to." (Trans. 36.) Officer Brown testified that when he observed the condition that Claimant's footwear was unsafe, he did nothing about it. (Trans. 37.) Furthermore, Officer Brown testified that he had made no recommendation to his supervisor or to correctional officers in the chain of command that the inmates working in the steel shop be provided with some sort of adequate footwear to protect against injury. (Trans. 38.)

The State of Illinois is required to exercise the same standards of care and safety as would be required of private industry. (*McGee v. State of Illinois* (1977), 31 Ill. Ct. Cl. 326, *Hoskins v. State of Illinois* (1965), 25 Ill. Ct. Cl. 234, 237.) It is clear in the case at bar that Claimant was not furnished with proper protective footwear for the job to which Claimant was assigned by the Department of Corrections. Furthermore, Claimant's supervisors were aware of the dangerous condition created by the lack of appropriate footwear and did nothing to correct the situation. The evidence is in conflict as to whether Claimant affirmatively requested protective footwear or not; the evidence is not in conflict, however, as to the point that the footwear being utilized by inmates occupying Claimant's job position was inadequate and dangerous and that this condition was known and recognized by those in charge of safety and supervision.

Under these circumstances, it appears that Claimant has demonstrated that the State was negligent. However, Claimant testified that the condition by which he was injured was a condition which would have been readily

apparent to him had he observed the manner in which the steel was stacked on the steel rack at the time that he approached the rack. Claimant testified that he just didn't look. Claimant was an experienced welder and testified that he was well acquainted with the hazards and dangers of his job. We find, therefore, that Claimant's negligence in connection with the injuries sustained by Claimant was at least 50% of the cause of this injury.

Under the new standard of tort responsibility as previously announced by the Illinois Supreme Court in *Alvis v. Ribar* (1981), 85 Ill.2d 1, 421 N.E.2d 886, we find that Claimant's damages in total were in the sum of $1,500.00 and that due to his comparative negligence it is found that Claimant is due the sum of seven hundred fifty dollars ($750.00) under the rule announced in the *Alvis* case.

It is therefore ordered that Claimant be, and hereby is, awarded the sum of $750.00.