(No. 87-CC-0322–

FRANK T. WHITE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 25, 1989.*

BERNARD A. PUGLISI, for Claimant.

NEIL F. HARTIGAN, Attorney General (GREGORY THOMAS PATRICK CONDON, Assistant Attorney General, of counsel), for Respondent.

DILLARD, J.

Claimant, Frank T. White, filed his complaint in the Court of Claims on August 25, 1986. He alleges that on January 4, 1986, while an inmate of the Illinois Department of Corrections, his right knee was severely injured while he performed certain physical labor at the direction of a prison guard. Claimant seeks $100,000 in damages.

The case was tried before a Commissioner on November 6, 1987. The evidence consists of the transcript of testimony, certain admissions pursuant to a demand to admit facts, trial exhibits, the departmental report pursuant to section 790.140 of the Court of Claims Rules (74 Ill. Adm. Code 790.140) and a supplemental departmental report. Both parties have filed briefs and Claimant's counsel has advised he would not be filing a reply brief.

### The Facts

On January 4, 1986, one day after his arrival at the Vienna Correctional Center, Claimant was directed to buff the floor and mop the lobby of the prison wing in

which he resided. This assignment was made by a sergeant of the Department of Corrections. Claimant testified that he had to follow the orders of the sergeant. Claimant completed the floor buffing in about 45 minutes. After he made a telephone call, Claimant alleged he was ordered to mop the stairwell down from the third floor to the first floor. No one supervised him during the mopping work. The mop weighed about two pounds and the bucket and ringer weighed 15 to 20 pounds. The mopping took about 40 minutes. He mopped down the three flights of stairs and then walked up three flights to put the mop and bucket away. After he mopped, Claimant felt pain in his right knee. He had no pain in his knee prior to the stair mopping and his knee had been "fine" in the six months prior to being assigned to Vienna. The pain was allegedly a grinding pain and very severe.

Claimant had a history of knee problems and testified that he explained this to the sergeant prior to the work. Claimant went to the medical unit and explained his knee pain to a medical technician. He was given pain killers and then was sent back to his living unit. The pain continued the evening of the physical activity and there was swelling around the joint. He went back to the medical unit on Sunday, January 5, 1986, for pain killers and received a lay-in slip which kept him off work details. On Monday, January 6, 1986, he saw a doctor. The doctor had Claimant transferred to a lower living unit so he would not have to climb stairs and prescribed Tylenol. X rays were also taken on January 6, 1986. The next time Claimant received any treatment was February 26, 1986, when the knee was still swollen and Claimant had considerable pain. In April of 1986, Claimant was taken to Lourdes Hospital in Paducah, Kentucky.

He told a physician at Lourdes Hospital that he had a history of knee trouble for the past four years but had not experienced problems since his last surgery. The doctor diagnosed that excessive weight on the knee made the top bone pierce the muscle tissue and the joint was grinding bone-to-bone. Arthroscopic surgery was recommended and performed on April 18, 1986, on an outpatient basis. The swelling remained and Claimant continued to take medication. As Claimant still experienced pain, he saw the doctor again in May of 1986. The doctor prescribed Claimant a brace, exercise equipment and continued his medication until January 11, 1986, when Claimant was released from prison.

The brace helped give the knee stability and Claimant used it daily. If he does not wear the brace, the knee gives out and he also experiences pain. After leaving prison, Claimant received treatment in Danville, Illinois. He had the knee drained and received a cortisone shot in August of 1986. In June of 1987, he had the knee X-rayed at a veterans hospital and was told no more surgery could be performed on the knee. He was advised by doctors that in five to six years he would need a reconstructed knee or to stay off of it altogether. The knee continues to swell and he has considerable pain from the knee whenever he walks or climbs stairs. Prior to the injury in question, Claimant walked and climbed stairs without pain. He had no problems with his knee since November 1981 when the arthroscopic surgery was first performed on the knee for bone chips.

Additionally, the Claimant testified that on the day he arrived at Vienna he had assisted an older inmate carry his boxes upstairs. On January 4, 1986, after buffing the floors, he got into an argument with the sergeant. Claimant testified that he informed the sergeant that he was in no condition to carry the weight

of the mop and bucket on the stairs. Allegedly the sergeant told the inmate to do the chore or face disciplinary action.

On cross-examination, Claimant admitted that he originally had injured his knee in 1980, while he worked as a painter. A ladder broke and he fell six feet, tearing ligaments and causing bone chips. His first surgery followed two months later. He did not participate in sports after the 1980 incident. Between 1980 and 1984, he had three major surgeries and three arthroscopic surgeries on his knee.

Additionally, Claimant testified that his workers' compensation claim for the 1980 injury as a painter led to a settlement of 40% to 60% loss of the right knee. At the time of hearing, Claimant had pending a claim for social security disability.

The departmental reports indicate that Claimant filed a grievance against the Respondent which complained of the work he was forced to do. The investigation found no staff negligence. The grievance dated January 4, 1986, only mentioned sweeping and buffing but significantly fails to mention mopping of stairs. In the sergeant's report, he indicated that Claimant was to buff all the front areas of the wing and the center core. However, Claimant did only one wing and quit because the buffing was too much for him and he wanted to make a telephone call. The sergeant explained to Claimant that if he had not been on the phone so long, he would have completed the work. Finally, the reports indicated that at the medical unit, Claimant made no statement that his knee was injured while he worked and did not inform his physician of a re-injured knee. The reports indicated that the State paid for all Claimant's medical treatment while incarcerated, totaling $2,910.86.

Importantly, Dr. Lopansri's departmental report stated, "I do not feel that the assignment of buffing the floor had any adverse effect on his knee."

## The Law

The Court of Claims must not unduly interfere with the large amount of discretion which must be accorded the Department of Corrections officials in handling the day-to-day affairs of operating its institutions. (*Petrusak v. State* (1987), 39 Ill. Ct. Cl. 113.) Inmates do, however, have a right to safe and adequate work tools and the State has a duty to properly supervise the work of inmates. (*Davis v. State* (1987), 39 Ill. Ct. Cl. 1985.) The State of Illinois is required to exercise the same standards of care and safety required of private industry. (*Burns v. State* (1982), 35 Ill. Ct. Cl. 782; *McGee v. State* (1977), 31 Ill. Ct. Cl. 326; *Hoskins v. State* (1965), 25 Ill. Ct. Cl. 234.) As an inmate, Claimant was required to take orders and carry them out. He did not have the same independence as a person outside the penitentiary. To refuse work would subject him to disciplinary action. *Goodrich v. State* (1984), 36 Ill. Ct. Cl. 326; *Moore v. State*, 21 Ill. Ct. Cl. 282.

The argument of Claimant is that he advised a guard of his knee condition, that he could not perform this heavy work, but did so because of the potential disciplinary action. He was, therefore, severely injured. The alleged notice to the guard would give notice to the State of a dangerous condition and a possible recovery. (*Burns v. State* (1982), 35 Ill. Ct. Cl. 782.) Only the notice would be a basis for recovery since there was no proof of an inherently dangerous condition or that the tools provided were not proper for their use. *Robinson v. State* (1984), 36 Ill. Ct. Cl. 298; *McCahee v. State* (1977), 33 Ill. Ct. Cl. 326.

The case turns on the credibility of the Claimant. The Claimant testified the floor buffing was not a problem for his knee. The injury occurred because of the mopping of the stairs. The Department's Rule 14 report indicated no orders to mop the stairs and Claimant's original grievance—the day of the occurrence— said nothing about mopping stairs. Dr. Lopansri's report from the health care unit indicated no complaint of mopping stairs and further stated that the assignment of buffing the floor had no adverse effect on Claimant's knee.

Since the State of Illinois is not an absolute insurer of Claimant's safety and if this chronically-injured knee just "gave out," the Respondent is not liable. If the Claimant only buffed the floor and not mopped the stairs, then his testimony is an attempt to defraud the State. The guard's report and Claimant's failure to address stair mopping as the cause of his injury in his original grievance filed on January 4, 1986—the day of the occurrence—lead to a credibility gap. If so, his testimony at trial was false and his claim must be denied. *Cotton v. State* (1986), 39 Ill. Ct. Cl. 167.

All of the cases cited by Claimant as to breach of duty have factual situations showing an inherently dangerous job, insufficient training for a particularly difficult or dangerous job, or that the State had knowledge of a dangerous condition. *Hoskins, supra; Reddock v. State* (1978), 32 Ill. Ct. Cl. 611; *Scott v. State* (1973), 28 Ill. Ct. Cl. 373; *West v. State* (1976), 31 Ill. Ct. Cl. 340; and *Adler v. State* (1977), 31 Ill. Ct. Cl. 326.) Such is not the case here before the Court.

Mopping, even assuming Claimant mopped stairs, would not be an inherently dangerous condition nor would it require special training. There was no

173

believable evidence the State had any knowledge that mopping would be an inherently dangerous condition to Claimant. As to buffing, the Claimant's testimony and the doctor's report indicate it was not a dangerous condition. The only danger would have been if Claimant advised the sergeant he could not mop the stairs because of a chronic knee ailment. This he did not do. The original grievance of Claimant, in his own handwriting, belies his argument. In that grievance, he states he was told to sweep and buff one wing. He grieved that he was ordered to do the remaining three wings. No mention at all was made of mopping three flights of stairs.

There was no negligence by the Respondent or its agents. Therefore, be it ordered that this claim must be, and is, denied.