

(No. 80-CC-1358–)

Nᴀᴛʜᴀɴɪᴇʟ Bʏɴᴜᴍ, Claimant, *v*. Tʜᴇ Sᴛᴀᴛᴇ ᴏғ Iʟʟɪɴᴏɪs, Respondent.

*Opinion filed January 21, 1992.*

Tʜᴏᴍᴀs F. Gᴇʀᴀɢʜᴛʏ, for Claimant.

Rᴏʟᴀɴᴅ W. Bᴜʀʀɪs, Attorney General (Jᴏʜɴ R. Bᴜᴄᴋ-ʟᴇʏ, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Burke, J.

This claim is brought by Nathaniel Bynum claiming negligence on the part of the State of Illinois for not providing adequate medical treatment, equipment and care while incarcerated at Stateville Correctional Institution from August 1976 through February 1978. Claimant's action is for physical damage and emotional distress allegedly sustained while hospitalized at the Stateville prison from 1976 through 1978. The amount claimed is $100,000.00.

Claimant alleges that while in the care of the State of Illinois-Department of Corrections, the State breached its duty of care owed him by denying him medically required striker boots, bedding and proper colostomy bags. Further, Claimant alleges that as a result of the State's failure to provide adequate medical attention he was forced to lie in his own excrement throughout much of his incarceration at Stateville. The lack of proper padding for his bed and proper colostomy bags led to the development of pressure sores on his previously healthy buttocks and feet. As a result of said pressure sores, Claimant had to receive skin grafts on his feet which prevented him from receiving physical therapy for his paraplegic condition, thus rendering him unable to walk.

Nathaniel Bynum became a paraplegic in September of 1973 due to a gunshot wound to his back. Between 1973 and 1975 Bynum participated in physical therapy at a number of institutions in the Chicago area that included ambulating between parallel bars with the aid of braces, lifting weights and a range of motion exercises.

On August 8, 1975, Claimant was charged with

unlawful use of a weapon and incarcerated pending his trial. He was sent to Cermak Hospital, the hospital of the Cook County Department of Corrections, to await trial and remained there for one year. In November of 1975, while at Cermak, Claimant had a colostomy performed. While at Cermak, Claimant learned how to care for his colostomy, including how to change the 3″ Karaya gum seal colostomy bags. In January of 1976, Claimant was able to stand with the aid of leg braces as evidenced by photographs taken of him at Cermak in 1976.

On August 6, 1976, Claimant was transferred to Joliet Prison. Soon after, he was sent to Stateville Prison and put in a hospital ward there. When Bynum arrived at Stateville Prison he had leg braces, crutches, walker, 3″ Karaya gum seal colostomy bags, striker boots and sheepskin.

The items that Claimant brought to Stateville were taken from him by an officer and put in the pharmacy. Although Bynum repeatedly asked the nurse and the guard for his equipment, he did not receive it. Bynum's repeated requests for the proper medical equipment to care for himself and his filing of a grievance with the prison in October of 1976 failed.

During 11 of the 18 months Claimant was at Stateville, he was given colostomy bags that either did not fit or did not adhere to the colostomy opening. According to a former inmate, Mr. Frank Scott, the colostomy bags leaked constantly and were the wrong size.

Claimant's expert witness, Dr. Michael Gonzales, stated that the standard of care for treatment of a paraplegic patient is the same whether or not the patient is incarcerated. He highlighted several kinds of special care which a paraplegic patient would need in order to prevent pressure sores. Based on his review of the medical

records, Dr. Gonzales found no evidence that Claimant received any of the special care. He further stated that according to the medical records, Claimant was given the wrong size colostomy bags and the colostomy did not adhere. Dr. Gonzales concluded that the medical care Claimant received at Stateville did not meet the standard of care in 1976-77 for institutions devoting themselves to the care of human beings.

Dr. Gonzales' undisputed testimony was that the care Claimant received at Stateville was neither ordinary nor reasonable care; the Illinois Department of Corrections was negligent in its provision of medical care for Claimant. He further stated that according to the medical records, Claimant did not receive physical therapy, which is very important to the development of a paraplegic, and the failure to provide a water or egg crate mattress, striker boots, and sheepskins all constituted negligence on the part of the Illinois Department of Corrections. Further, Dr. Gonzales' undisputed conclusion was that, but for the inadequate treatment Claimant received at Stateville, he would be able to walk today.

Respondent's expert, Dr. Shansky, agreed that the standard of care is the same for the treatment of paraplegic patients whether one is or is not incarcerated. Dr. Ronald Shansky agreed that a physician who practiced physical and rehabilitative medicine since 1976 would be able to outline the standard of care for treatment of a paraplegic patient in 1976. Dr. Shansky also conceded that Claimant did not receive physical therapy in 1976.

The immediate result of the inadequate care Claimant received at Stateville was that he developed pressure sores. These pressure sores then became infected from leaking fecal material from the inadequate colostomy bags which further exacerbated the condition of the

sores on Claimant's feet. After he received a skin graft to remove the pressure sores, Claimant could not walk due to the breakdown of the skin on his feet. As a result of not being able to walk, Claimant is prone to contractions and limitations of mobility in the limbs. He is also subject to a condition called ectopic bone blood clots and general muscle deterioration.

Dr. Gonzalez stated that in his examination of Claimant, Claimant cannot walk and will never be able to walk again and inadequate care Claimant received at Stateville is the direct cause of Claimant's inability to walk.

The State of Illinois owes a duty of care to provide reasonable medical care to its prisoners; thus, negligent medical treatment of a prison inmate can result in liability against the State. (*McDougle v. State* (1978), 32 Ill. Ct. Cl. 463, 469.) The duty owed by the State to inmates is the same as that owed to non-inmates.

"The State cannot escape its duty to an individual merely because he or she is an inmate of an institution. The Court has held on numerous occasions that the State must meet the same standard of care and safety as required of private industry." *McGee v. State* (1977), 31 Ill. Ct. Cl. 326, 330.

The State of Illinois, the Department of Corrections, and their employees breached their duty of care to Claimant by denying him adequate medical supplies, treatment, and care. In order to prevent pressure sores, paraplegic patients should be given either water mattresses or egg crate mattresses and sheepskins; paraplegic patients should also be given protective footwear, commonly called striker boots. Claimant testified that he received none of the preceding items or care. Based on Dr. Gonzales' review of the medical records, he found no evidence that Claimant received any of the preceding items or care. The State and its employees also breached their duty of care by denying

Claimant the care and training necessary to maintain his demonstrated progress and physical rehabilitation. The Respondent presented no evidence to the contrary. With respect to Claimant's boots and padding, it has been held that failure to provide inmates with proper protective footwear constitutes negligence. *Burns v. State* (1982), 35 Ill. Ct. Cl. 782.

As to the provisions of adequate colostomy bags, both the medical records and the Claimant's witnesses indicate that through the majority of his stay (approximately 11 out of 18 months) Claimant was given the wrong type and size colostomy bags. The medical staff was well aware of Claimant's condition. The medical records indicate that he constantly complained about the inadequate care he was receiving, especially as compared to the care he had received at outside hospitals. Claimant also filed a grievance with the prison authorities in October of 1976. In his grievance, Claimant told the authorities that he needed size 3 colostomy bags, striker boots, sheepskins, a water mattress, antiseptics for his feet and physical and occupational therapy.

Further evidence of the Illinois Department of Corrections' knowledge of Claimant's condition is in an inter-departmental memorandum from James Lee, associate administrator, medical services, to Cecil Patmon, administrator, medical services. In the memo, Mr. James admitted that there were problems with Claimant's care, and that the medical personnel had been informed of the problem. Despite the knowledge on the part of the Stateville administrators, no remedy was provided. Failure to provide timely medical attention has been held to constitute negligence. *Davidson v. State* (1983), 35 Ill. Ct. Cl. 825.

The Illinois Court of Claims has held that

"there is no fixed rule of compensation and damages for personal injuries, and that.compensation is incapable of exact mathematical calculations." *DeWeese v. State* (1973), 28 Ct. Cl. 230, 238, citing *Swearinger v. Kinger* (1968), 91 Ill. App. 2d 251.

One way to measure damages is to compare the damage awards received in similar cases. In making that comparison to the instant case, we look at three cases. In *Smith v. Illinois Central R.R. Co.*, 343 Ill. App. 593, 99 N.E.2d 717, an award of $185,000.00 in damages was upheld for a plaintiff whose legs were amputated. In *Mayer v. St. Louis Public Service Co.* (1954), 269 S.W. 2d 101, the plaintiff suffered from spastic paraplegia, but could walk with the aid of braces, was subsequently hit by a bus and both legs were crushed, and the court upheld an award of $25,000.00 as not being excessive. In *Sexner v. Bensen* (7th Cir. 1984), 727 F.2d 669, *aff'd* (1985), 477 U.S. 193, the plaintiffs were awarded $128.00 per each day spent in segregation which was "extremely unsanitary and repulsive."

Wherefore it is hereby ordered that Claimant is awarded the sum of $89,000.00 in full and complete satisfaction of this claim.